**LANDMARK CHEVROLET CORP., Bill Heard Chevrolet Corp., and Bill Heard Enterprises, Inc., Appellants,**

v.

**UNIVERSAL UNDERWRITERS INS. CO., Appellee.**

**No. 01–02–01008–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 26, 2003.

Jack McKinley, Ramey, Chandler, McKinney & Zito, P.C., Houston, TX, for Appellant.

Thomas Burton, Philip S. Gordon, Gordon Law Firm, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and ALCALA.

## OPINION

SHERRY RADACK, Chief Justice.

Appellants, Landmark Chevrolet Corp., Bill Heard Chevrolet Corp., and Bill Heard Enterprises, Inc. (collectively, "the dealerships"), bring this appeal from a judgment declaring that appellee, Universal Underwriters Insurance Company ("Universal"), has no duty to defend them in two, underlying class-action lawsuits brought by customers of the dealerships. We affirm.

## BACKGROUND

### The Underlying Lawsuits

The dealerships were sued by two classes of former customers,[1] who alleged that, as a part of the purchase of their automobiles, they were charged a "Consumer Services Fee" in return for a worthless coupon book. The underlying petitions allege that the Consumer Services Fee "was not explained to [the class members] other than to say that it was part of the price of the vehicle," nor did the dealerships explain "what the 'Consumer Services' were." The underlying petitions specifically allege violations of the Texas Deceptive Trade Practices Act and fraud. The petitions do not allege that the dealerships extended credit in connection with any of the automobile purchases, nor do they allege any violations of state or federal truth-in-lending laws.

### The Policy Provisions

Universal issued a policy to the dealerships that provided Statute and Title E & O (STEO) coverage. Under this policy, Universal had a duty to defend any claim against the dealerships arising out of an alleged violation of any federal, state, or local truth-in-lending or truth-in-leasing law.

The applicable policy provisions at issue are as follows:

**WE will pay all sums the INSURED legally must pay as DAMAGES because of STATUTE AND TITLE E & O when such insurance is included in the declarations.**

WE have the right and duty to defend any SUIT asking for these DAMAGES. WE may investigate and settle any claim or SUIT WE consider appropriate. OUR payment of the limit shown in the declarations ends OUR duty to defend. WE have no right or duty to defend SUITS for DAMAGES not covered by or declared for this Coverage Part.

WE will pay all defense costs actually incurred to defend any SUIT asking for CUSTOMER COMPLAINT DEFENSE and EMPLOYMENT RELATED DEFENSE when such insurance is included in the declarations.

1. Cause No. 747,322; *Larry T. Sadler, Individually and on Behalf of all Other Similarly Situated Consumers and Pete N. Lopez, Individually and on Behalf of all Other Similarly Situated Consumers v. Landmark Chevrolet Corp., Bill Heard Chevrolet Corp., and Bill Heard Enterprises, Inc.;* In the County Civil Court at Law No. Three of Harris County, Texas ("the Sadler suit").

Cause No. 2001–39442, *Pete N. Lopez, Individually and on Behalf of all Other Similarly Situated Consumers v. Bill Heard Chevrolet Corp. And Bill Heard Enterprises, Inc.;* In the 127th Judicial District Court of Harris County, Texas ("the Lopez suit").

"CUSTOMER COMPLAINT DE-FENSE" means any SUIT filed against YOU during the Coverage Part period by or on behalf of a customer arising out of the sale, lease, rental, service or repair of YOUR PRODUCT, other than as a direct result of an OCCURRENCE or as defined in STATUTE AND TITLE E & O.

**"STATUTE AND TITLE E & O" means any claim or SUIT filed against YOU** other than as a result of an OCCURRENCE or CUSTOMER COMPLAINT DEFENSE, **by or on behalf of:**

(a) **a customer arising out of GA-RAGE OPERATIONS, because of an alleged violation during the Coverage Part period, of any federal, state or local:**

(1) odometer law;

(2) **truth-lending or truth-in-leasing law;**

(3) auto damage disclosure law;

(4) competitive auto parts law;

(5) used car "Buyers Guide," including federal regulation 455.

(Emphasis added).

### The Declaratory Judgment Action

Universal declined to defend the dealerships in the underlying suits under the STEO coverage,[2] on the grounds that the underlying petitions make "no legal allegations of truth-in-lending violations," nor do "the factual allegations indicate that the Plaintiff(s) are claiming violations of truth-in-lending laws." Universal then filed this declaratory judgment action, seeking a declaration that it did not owe the dealerships a duty to defend them in the underlying lawsuits. The trial court granted summary judgment in Universal's favor.

### This Appeal

In two related points of error on appeal, the dealerships contend that the trial court erred by granting summary judgment in Universal's favor. Specifically, the dealerships contend that the pleadings in the underlying cases, when construed under the "eight corner's rule," are sufficient to bring the cases within Universal's duty to defend. Alternatively, the dealerships argue that we should consider extrinsic evidence to supply facts absent from the pleadings in the underlying cases, so as to trigger Universal's duty to defend.

## DUTY TO DEFEND

### The "Eight Corners" Rule

 If a petition does not allege facts within the scope of coverage, an insurer is not required to defend a suit against its insured. *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997). To determine an insurer's duty to defend, we apply the "eight-corners" rule, comparing the factual allegations in the four corners of the pleadings with the language in the four corners of the insurance policy. *Id.* In applying that rule, we focus on the factual allegations that show the origin of the damages, rather than on the legal theories alleged, give a liberal interpretation to the allegations in the petition, and resolve doubts in favor of coverage. *Id.* However, we may not read facts into the pleadings, look outside the pleadings, or imagine factual scenarios that might trigger coverage. *Id.* at 142; *St. Paul Ins. Co. v. Tex. Dept. of Transp.*, 999 S.W.2d 881, 885 (Tex.App.-Austin 1999, pet. denied). An insurer's duty to defend arises if the factual allegations in the pleadings against the insured,

---

2. Although Universal declined to defend the dealerships under the STEO coverage, it did provide a defense under a separate Consumer Complaint Defense Coverage, until the $25,000 limit under that coverage was exhausted. The defense obligation under the STEO coverage has no such limit.

when fairly and reasonably construed, state a cause of action potentially covered by the policy. *See Nat'l Union*, 939 S.W.2d at 141. A duty to defend any of the claims against an insured requires the insurer to defend the entire suit. *Stumph v. Dallas Fire Ins. Co.*, 34 S.W.3d 722, 728 (Tex.App.-Austin 2000, no pet.). With these principles in mind, we must decide whether the factual allegations of the underlying lawsuits potentially state a case within coverage, *i.e.*, a violation of truth-in-lending or truth-in-leasing laws.

The Federal Truth–in–Lending Act ("TILA") requires "creditors" to make certain "material disclosures" including, among others, these: the annual percentage rage, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number of and amount of payments, and the due dates or period of payments scheduled to repay the indebtedness. *See* 15 U.S.C. § 1602(f), (u) (2000). Similarly, the Motor Vehicle Installment Sales Act (MVISA) requires that motor-vehicle installment sales contain certain disclosures. *See* Tex. Fin.Code Ann. §§ 348.001–348.518 (Vernon 1998 & Supp.2004). A retail installment transaction, generally, is a sale in which the buyer agrees to pay part or all of the cash price in deferred installments. Tex. Fin.Code Ann. § 348.001(7) (Vernon 1998).

Even giving the pleadings in the *Lopez* and *Sadler* suits the required liberal construction, we conclude that they do not allege facts indicating that the *Lopez* and *Sadler* plaintiffs are seeking damages for a violation of a federal or state truth-in-lending or truth-in-leasing law. The petitions do not allege, as required to state a claim under TILA, that the dealerships were "creditors" or that the automobile purchases were made on credit. Similarly, the petitions do not allege, as required to state a claim under MVISA, that the cash value of the automobiles was to be paid in deferred installments. Because the pleadings in the *Lopez* and *Sadler* cases did not allege facts necessary to support a cause of action under federal or state truth-in-lending or truth-in-leasing laws, the trial court did not err by granting Universal's summary judgment motion. *See Penn. Pulp & Paper Co. v. Nationwide Mut. Ins. Co.*, 100 S.W.3d 566, 575 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (holding no duty to defend because, even though malicious prosecution claims would be covered by the policy, underlying petition did not allege elements necessary to state a claim for malicious prosecution).

### Consideration of Extraneous Evidence

■ In issue two, the dealerships argue that we should create an exception to the "eight corners rule" and consider unpleaded, but undisputed, factual allegations. Essentially, the dealerships argue that we should consider extrinsic evidence to supply the missing factual allegation, *i.e.*, that the automobile sales were made on credit. We begin by noting that the Texas Supreme Court has never recognized an exception to the "eight corners rule" to permit the introduction of extraneous evidence.

Additionally, this Court has specifically considered, and rejected, such an exception. In *Tri–Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co.*, 981 S.W.2d 861, 862–64 (Tex.App.-Houston [1st Dist.] 1998, pet. denied), the insurer declined to defend Tri–Coastal in a suit brought by one of Tri–Coastal's employees, contending that it owed no duty to Tri–Coastal under the contract because Tri–Coastal had paid the injured employee worker's compensation benefits, a fact that precluded coverage. *Id.* at 862. As proof that Tri–Coastal had paid the injured em-

ployee worker's compensation benefits, the insurance company attached copies of canceled worker's compensation checks, which had been paid to the injured employee. *Id.* The trial court granted summary judgment in favor of the insurer. *Id.* On appeal, Tri–Coastal contended that the trial court erred by considering evidence outside the allegations of the underlying petition and the policy. *Id.* This Court agreed, holding that "the trial court erred in considering extrinsic evidence in determining [the insurer's] duty to defend." *Id.* at 864.

Accordingly, we decline to apply an exception to the "eight corners rule" to allow extrinsic evidence to inject facts into the pleadings of the underlying cases.[3]

We overrule issues one and two.

We affirm the judgment.

---

**3.** We note that some intermediate appellate courts have allowed extrinsic evidence, but only in very limited circumstances, none of which are applicable here. *See Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.,* 267 F.Supp.2d 601, 621 (E.D.Tex. 2003) (analyzing Texas intermediate appellate courts' treatment of this issue and noting that Texas Court have permitted extraneous evidence only on "fundamental coverage issues" such as (1) whether a person has been excluded by name or description from *any* coverage, (2) whether the property in suit has been expressly excluded from *any* coverage; and (3) whether the policy exists).