Opinion issued January 6, 2005
     












In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00989-CV




KING CHAPMAN & BROUSSARD CONSULTING GROUP, INC. AND
WILLIAM BROUSSARD, Appellants

V.

NATIONAL UNION FIRE INSURANCE COMPANY 
OF PITTSBURGH, PA, Appellee




On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2002-37888




O P I N I O N

          Appellants, King Chapman & Broussard Consulting Group, Inc. (KCB) and
William Broussard, sued appellee, National Union Fire Insurance Company of
Pittsburgh, PA (National Union), for breaching its defense and indemnification
obligations under a directors and officers’ (D&O) insurance policy.


 National Union
moved for summary judgment based upon the policy exclusions for contractual
liability and prior litigation, and the trial court granted National Union’s motion. We
hold that the trial court properly rendered summary judgment for National Union
based on the policy’s exclusions. We therefore affirm.
The Facts and Procedural History 
Turner v. Broussard
          Broussard is an officer and director of KCB, a management consulting
corporation. In 1996, William Broussard and Evelyn Turner divorced. Five years
later, in 2001, Turner sued Broussard in his individual capacity, seeking alimony and
other contractual rights allegedly accorded to her in the divorce decree.


 Among
other allegations, Turner alleged that the divorce agreement recited: “Broussard
covenants that he will be receiving funds for the benefit of Evelyn Grace Turner and
as such is acting in a fiduciary capacity with regard to her interests as reflected
therein.” Based on this provision, Turner alleged Broussard had breached his
fiduciary duty to her. 
          In December 2001, Broussard and Turner settled their dispute relating to the
amounts owed under the divorce agreement. In addition to Broussard, the settlement
agreement released KCB, its subsidiaries, and its affiliates.
          The D&O Policy
          In September 1999, National Union issued a D&O policy to KCB that insures
KCB’s directors, officers, and employees against losses for “wrongful acts”
committed “in their capacities” as directors, officers, or employees.


 The policy
excludes coverage for claims that allege contractual liability or that arise out of prior
litigation. Under exclusion (f), National Union is not liable for claims:
 
alleging, arising out of, based upon or attributable to any actual or
alleged contractual liability of the Company or any other Insured under
any express contract or agreement, [except for employment practice
claims].
Under exclusion (h), National Union is not liable for claims:
 
alleging, arising out of, based upon or attributable to as of the
Continuity Date, any pending or prior litigation . . . 
The “Continuity Date” to which the prior litigation exclusion refers in this case is the
policy inception date of September 9, 1999. 
          Broussard and KCB v. National Union
          In February 2001, Broussard and KCB demanded that National Union provide
coverage for Turner’s lawsuit against Broussard under KCB’s D&O policy. National
Union denied coverage. In July 2002, after Broussard and Turner settled their dispute
relating to the divorce agreement, Broussard and KCB together sued National Union
in this case, seeking reimbursement for defense and settlement costs incurred in the
Turner lawsuit and for National Union’s breach of the duty of good faith and fair
dealing in its denial of coverage and a defense of the Turner lawsuit. Broussard and
KCB sought damages of $783,000, consisting of: $100,000 for Broussard’s
attorney’s fees, $100,000 for KCB’s attorney’s fees, $183,000 for the present value
of the agreed judgment in the divorce case, $25,000 for reproduction and photo
copying costs, and $375,000 in loss to the company for time spent on the Turner
matter by Broussard and others. 
          National Union moved for summary judgment on three grounds: (1) the
allegations in Turner’s lawsuit are not within the D&O policy’s scope of coverage,
because Turner did not allege wrongful acts committed in Broussard’s capacity as a
director or an officer; (2) the D&O policy excludes Broussard and KCB’s claims
because the Turner lawsuit arises out of prior litigation; and (3) the D&O policy
excludes Broussard and KCB’s claims because Turner’s allegations arise out of an
alleged liability under an “express contract,” i.e., the divorce agreement. The trial
court granted National Union’s motion for summary judgment, but later set it aside. 
          National Union then filed a supplemental motion for summary judgment, in
which it dropped the first ground and asserted only the two policy exclusions as
grounds. Broussard and KCB presented evidence in opposition to the motion,
including affidavits by Broussard, Don Peterson, Thomas Oldham, and Donn
Fullenweider.


 National Union objected to these, save Peterson’s original affidavit.



The trial court rendered summary judgment in favor of National Union, ordering that
Broussard and KCB take nothing. The summary judgment order does not expressly
rule on National Union’s objections, nor does it state the specific ground upon which
the trial court granted the motion. Broussard and KCB appeal the trial court’s
summary judgment. National Union raises a cross-issue, asking that we affirm on the
alternative basis that the D&O policy does not afford coverage.
 
Standard of Review
          We review a summary judgment under a de novo standard. Provident Life &
Acc. Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). We view all evidence in a
light favorable to the nonmovant, and we indulge every reasonable inference in the
nonmovant’s favor. Id. For a traditional summary judgment, as here, the moving
party must show that no genuine issue of material fact exists and that it is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c). If, as here, the trial court’s
order does not specify the grounds for its summary judgment, then we affirm should
any of the theories presented to the trial court and preserved for appellate review have
merit. See Knott, 128 S.W.3d at 216. 
The Eight Corners Rule
          Under the eight corners rule, the allegations in the pleadings and the language
of the insurance policy determine an insurer’s duty to defend. National Union Fire
Ins. Co. of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141
(Tex. 1997). We view the factual allegations in the petition liberally, resolving any
doubt in favor of the insured. McCarthy Bros. Co. v. Cont’l Lloyds Ins. Co., 7
S.W.3d 725, 728 (Tex. App.—Austin 1999, no pet.). An insurer must defend a suit
if the petition alleges facts within the scope of coverage. Merchants Fast Motor
Lines, 939 S.W.2d at 141. “The duty to defend is not affected by facts ascertained
before suit, developed in the process of litigation, or by the ultimate outcome of the
suit.” American Alliance Ins. v. Frito-Lay, Inc., 788 S.W.2d 152, 154 (Tex.
App.—Houston [1st Dist.] 1990, writ dism’d); see also Adamo v. State Farm Lloyds
Co., 853 S.W.2d 673, 676 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (“It
is not the cause of action alleged that determines coverage but the facts giving rise
to the alleged actionable conduct.”) (emphasis in original). 
          In general, a coverage determination does not consider matters outside the
policy and the pleadings. Capital Bank v. Commonwealth Land Title Ins. Co., 861
S.W.2d 84, 88 (Tex. App.—Houston [1st Dist.] 1993, no writ). We will not read facts
into the pleadings, nor will we “imagine factual scenarios which might trigger
coverage.” Merchants Fast Motor Lines, 939 S.W.2d at 142. We therefore examine
whether the allegations in Turner’s petition together with the D&O policy language
impose a duty upon National Union to defend and indemnify Broussard and KCB in
the Turner lawsuit.
The Petition
          In her petition, Turner alleges as follows:
(1)Constructive Trustee and Fiduciary Duty Obligations. In
paragraphs 9-11, Turner alleges that Broussard breached his
constructive trustee and fiduciary duty obligations, established
under section 7.16 of the divorce agreement. Section 7.16
provides that Broussard is a constructive trustee for any property
or monies he receives that are to be awarded to Turner under the
agreement and “as such is acting in a fiduciary capacity with
regard to her interests.” Turner also alleges that Broussard is
“guilty of fraud in connection with the divorce agreement and is
furthermore liable for punitive damages.”
 
(2)Breach of Contractual Alimony Obligations. In paragraphs 12-15, Turner alleges that Broussard breached sections 3.02 and 3.03
of the divorce agreement, which require him to pay Turner $6,600
per month as contractual alimony and to prepay Turner a portion
of the alimony. Turner alleges that failure to pay the alimony
payments “as the parties agreed is a breach of contract.” 
 
(3)1992 Personal Billings. In paragraphs 16-17, Turner alleges that
Broussard failed to pay Turner 50% of all payments received by
Broussard arising from his 1992 “Personal Billings” as required
by schedule 2, section 11 of the divorce agreement.
 
(4)KCB&G Outplacement Company. In paragraphs 18-21, Turner
alleges that Broussard failed to pay Turner 50% of all payments
he received as a result of the sale of a certain entity, KCB&G, to
AIM, Inc., as required by section 7, schedule 2 of the divorce
agreement. She complains of accountings prepared by Peterson,
because Peterson owes “allegiance to Broussard and the
corporations in which Broussard owns an interest.”
 
(5)Improper Income Deductions. In paragraphs 22-24, Turner
alleges that Broussard made improper income deductions in
calculating his alimony prepayment obligations under section
3.03 of the divorce agreement. 
 
(6)Insurance Policy. In paragraphs 25-26, Turner alleges that
Broussard failed to maintain a life insurance policy naming
Turner as an irrevocable beneficiary, as required by the divorce
agreement. 
 
(7)Industrial Transformation, Ltd. Union/Labor Management
Initiative Payments. In paragraphs 27-31, Turner alleges that
Broussard failed to pay Turner 50% of all pre-tax revenues paid
directly or indirectly to Broussard from KCB’s union/labor
management initiative conducted through Industrial
Transformation, Ltd., as required by section 10, schedule 2 of the
divorce agreement.
 
(8)KCB Holding Company Stock. In paragraphs 32-34, Turner
alleges that she is entitled to the stock under section 2.02 of the
divorce agreement, which provides that any community property
omitted from the schedule to the divorce agreement shall be
awarded to the party not in possession. The stock of KCB
Holding Company was omitted from the schedules, and Broussard
was in possession of such property.
 
(9)Tekniko License Debt Payment. Broussard received a distribution
in connection with a Tekniko License, based on a separate debt
that existed prior to the divorce agreement. In paragraphs 35-37,
Turner alleges that the prior obligation was community property;
therefore, she is entitled to payment under section 2.02 of the
divorce agreement. 
 
(10)Concealment of Bonus Rights. In paragraphs 38-41, Turner
alleges that she is entitled to bonus rights under section 2.02 of
the divorce agreement. Turner alleges that a unanimous consent
of the board of directors of KCB Holding Co. deferred
Broussard’s bonus rights for 1993 and 1994, and Broussard
omitted the bonus rights from the schedule of the divorce
agreement. 
 
(11)Breach of Fiduciary Duty/Constructive Fraud. In paragraph 42,
Turner alleges, “Broussard, as Turner’s former spouse, becomes
partner and pursuant to the terms of the Divorce Agreement had
a fiduciary relationship with and a fiduciary duty to Turner.” 
Turner claimed that Broussard violated these duties by forgiving
KCB’s obligations to pay 1992 personal billings, of which Turner
was to receive 50%, and voting/assisting in the alleged
dissolution of Industrial Transformation, Ltd. 
Under the eight corners rule, we compare these allegations with the relevant D&O
policy provisions to determine coverage. 
The Policy Exclusions
          An insurer has no duty to defend if a petition against an insured alleges facts
excluded by the policy. Fidelity & Guar. Ins. Underwriters, Inc. v. McManus, 633
S.W.2d 787, 788 (Tex. 1982). National Union moved for summary judgment on the
basis that the D&O policy excludes coverage for claims “alleging, arising out of,
based upon or attributable to” an express contract or prior litigation. Broussard and
KCB respond that these exclusions do not apply, because Turner’s allegations pertain
at least in part to Broussard’s allegiance and duty to KCB as a director and officer,
and not to the Turner divorce litigation or the divorce decree contract settling that
litigation. 
          Express Contract
          Exclusion (f) of the D&O policy provides that National Union is not liable for
claims “alleging, arising out of, based upon or attributable to any actual or alleged
contractual liability of the Company or any other Insured under any express contract
or agreement.” National Union contends that the D&O policy excludes Broussard
and KCB’s claims because Turner’s allegations arose out of an alleged liability under
an “express contract”—the divorce agreement. Broussard and KCB respond that
Turner’s petition “is riddled with allegations of malfeasance by corporate officers”
and that her allegations “directly concern Broussard’s conduct as an officer—not any
alleged failure to abide by the divorce agreement.”
          Turner’s suit against Broussard alleges that Broussard breached his obligations
under the divorce settlement agreement by failing to pay alimony and other amounts
due under the agreement. A review of Turner’s amended petition, as set forth above,
demonstrates that each of Turner’s allegations arises out of, is based upon, and can
be attributed to specific sections of the divorce decree. For example, Turner did not
allege that Broussard breached any fiduciary duty in his capacity as a corporate
officer or director—and the parties agree that Turner owned no stock in KCB and was
not a shareholder.


 Rather, Turner alleged that Broussard breached his constructive
trustee and fiduciary duty obligations expressly established under section 7.16 of the
divorce agreement. Broussard and KCB respond that a breach of fiduciary duty claim
sounds in tort. In this case, however, the only breach of duty Turner alleges is one
expressly created by the settlement contract. Such a claim “arises out of” and is
“attributable to” the alleged breach of the divorce agreement.
          Broussard and KCB further respond that certain of the alleged breaches of
contract necessarily required Broussard to undertake acts in his capacity as an officer
of KCB. In particular, they point to paragraph 42 of Turner’s petition, in which she
alleges that Broussard breached the divorce agreement when he voted or assisted in
the dissolution of Industrial Transformation, Ltd. Assuming that such an allegation
falls within the scope of coverage under the D&O policy, it nevertheless also falls
within the policy’s contract exclusion, because it plainly arises out of Broussard’s
contractual obligation to Turner.
          In addition, the jurisdiction and venue paragraphs in Turner’s petition expressly
refer to the divorce agreement. Turner alleges that jurisdiction is proper in the 308th
District Family Court because the parties divorced in that court and “there are
controversies between the parties arising under the divorce agreement which are ripe
for adjudication. [Broussard] breached this agreement.” Turner’s venue paragraph
alleges that Broussard “breached the agreement,” causing damage in Harris County,
Texas.
          Under the eight corners rule, we evaluate whether National Union’s duty to
defend exists based on the allegations in Turner’s petition and the D&O policy. See
Merchants Fast Motor Lines, 939 S.W.2d at 142. Turner sued Broussard
individually, and each of her allegations relate to Broussard’s contractual liability
under the divorce agreement. We hold that Turner’s claims “allege, arise out of, are
based upon or attributable to” the divorce agreement; therefore, exclusion (f)
precludes coverage under the express contract exclusion, and the trial court properly
rendered summary judgment based on this exclusion. 
          Prior Litigation
          Exclusion (h) of the D&O policy provides that National Union is not liable for
claims “alleging, arising out of, based upon or attributable to as of the Continuity
Date [September 9, 1999], any pending or prior litigation.” Broussard and Turner
divorced in 1996; thus, the divorce litigation occurred before the 1999 continuity
date. Turner sued Broussard in 2001, alleging that Broussard failed to pay alimony
or other amounts due under their divorce agreement. After reviewing the allegations
in Turner’s amended petition, we conclude that each of Turner’s allegations arises out
of specific sections of the 1996 divorce decree. The prior litigation exclusion
therefore precludes coverage.
          Broussard and KCB rely on Whitworth v. Chiles Offshore Corp. for the
proposition that the prior litigation exclusion in the D&O policy is ambiguous. No.
92-1504, 1993 WL 177186, at *1 (E.D. La. May 14, 1993). In Whitworth, the
litigation alleged to trigger coverage had been pending before the insurance policy’s
inception date. Id. The plaintiff in the underlying litigation, however, did not name
the officers and directors as defendants until after the inception date. Id. Whitworth
is distinguishable, because Broussard was the sole defendant in the 1996 Turner
divorce litigation, and it concluded before the D&O’s policy’s 1999 continuity date. 
Thus, no interpretive issue as to whether the divorce litigation was “prior” to the
inception date arises. The prior litigation exclusion is not ambiguous in this case, and
the trial court properly rendered summary judgment for National Union based on this
exclusion.
The Summary Judgment Affidavits
          Broussard and KCB urge this court to consider extrinsic evidence in addition
to the petition and policy. For example, they point to Turner’s discovery responses,
in which she names KCB as “a potential party” to the suit. Broussard and KCB also
rely on the affidavits they filed in opposition to National Union’s motion for summary
judgment by Broussard, Peterson, Oldham, and Fullenweider. Broussard and KCB
contend that these affidavits raise a genuine issue of material fact as to whether
Broussard acted solely as Turner’s ex-husband or at least in part as a KCB
officer/director. 
          Broussard and his co-officer, Peterson, offer affidavits that interpret the factual
allegations in Turner’s pleadings as ones involving Broussard’s role as an officer and
a director. Broussard’s original affidavit avers that “all of [Turner’s] claims for future
contingency payments through me for her shares in KCB came down to a claim that
I, acting as an officer and director, took actions which prevented her from receiving
her interests.” Broussard’s amended affidavit characterizes Turner’s suit as one
alleging that Broussard “defrauded [Turner] out of money she was owed by abusing
my power as a corporate officer and/or director.” In other words, Turner’s allegations
concerned business decisions requiring corporate approval. In his supplemental
affidavit, Peterson, the Chief Financial Officer of KCB, similarly states that Turner’s
allegations refer to decisions by KCB officers and/or directions to dissolve Industrial
Transformation, Ltd. and to defer certain bonuses and the AIM sale. 
          Broussard also offers an affidavit that interprets the legal character of the
Turner lawsuit. Thomas Oldham, a professor of law at the University of Houston
Law Center, opines in his affidavit that Turner’s suit “would have to be sounded in
tort for breach of fiduciary duty based on Broussard’s being a shareholder, officer,
and director of KCB. There was not a claim for breach of contract against him for
failure to perform a specific provision of the [divorce agreement] because he didn’t
breach that agreement.” 
          Broussard urges that these affidavits create a fact issue as to coverage, because
they cast a different light on the allegations in the petition. The Texas Supreme
Court, however, has never recognized an exception to the strict eight corners rule so
as to allow courts to examine extrinsic evidence in determining an insurer’s duty to
defend. Landmark Chevrolet Corp. v. Univ. Underwriters Ins. Co., 121 S.W.3d 886,
890 (Tex. App.—Houston [1st Dist.] 2003, pet. filed). Moreover, even the Texas
appellate courts that have allowed such evidence have done so in the most limited of
circumstances. For example, in State Farm Fire & Cas. Co. v. Wade, the Corpus
Christi Court of Appeals considered extrinsic evidence about the use of a boat that
was the subject of the policy, because the court could not determine whether the
personal boat owner’s private liability policy provided coverage. 827 S.W.2d 448,
453 (Tex. App.—Corpus Christi 1992, writ denied). The court held that the boat’s
use at the time of the accident—whether commercial or private—was an essential fact
of coverage that did not question the truth or falsity of any facts alleged in the
underlying petition. Id. Here, the Turner petition specifically alleges acts that give
rise to liability under the settlement agreement—which expressly determine that
coverage is excluded. 
          For further support, Broussard and KCB cite to Utica Lloyd’s of Texas v. Sitech
Engineering Corp., in which the Texarkana Court of Appeals, citing to the Wade
exception, stated that a court may consider extrinsic evidence if the policy terms are
ambiguous, or the petition does not contain factual allegations sufficient to enable the
court to determine whether the claims are within the policy coverage. 38 S.W.3d 260,
263 (Tex. App.—Texarkana 2001, no pet.). The Utica court, however, held that the
trial court had erred in considering extrinsic evidence in that case, as neither of the
exceptions applied. Id. at 263-64. Similarly, in this case, we find the factual
allegations in the Turner petition sufficient to determine whether the prior litigation
and breach of contract exclusions apply. 
          Finally, our court has rejected the Wade exception and applies a strict eight
corners rule. Landmark Chevrolet, 121 S.W.3d at 890-91; Tri-Coastal Contractors,
Inc. v. Hartford Underwriters Ins. Co., 981 S.W.2d 861, 863-64 (Tex.
App.—Houston [1st Dist.] 1998, pet. denied). We observe that the Fifth Circuit also
recently made an Erie guess


 that the Texas Supreme Court does not recognize any
exception to the strict eight corners rule:
In light of the Texas appellate courts’ unwavering unwillingness
to apply and recent repudiations of the Wade type of exception, this
Court makes its Erie guess that the current Texas Supreme Court would
not recognize any exception to the strict eight corners rule. That is, if
the four corners of the petition allege facts stating a cause of action
which potentially falls within the four corners of the policy’s scope of
coverage, resolving all doubts in favor of the insured, the insurer has a
duty to defend. If all the facts alleged in the underlying petition fall
outside the scope of coverage, then there is no duty to defend. However,
in the unlikely situation that the Texas Supreme Court were to recognize
an exception to the strict eight corners rule, we conclude any exception
would only apply in very limited circumstances: when it is initially
impossible to discern whether coverage is potentially implicated and
when the extrinsic evidence goes solely to a fundamental issue of
coverage which does not overlap with the merits of or engage the truth
or falsity of any facts alleged in the underlying case.
Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 531 (5th Cir. 2004).
          We follow our precedent and decline to apply an exception to the eight corners
rule. See Landmark Chevrolet, 121 S.W.3d at 891; Tri-Coastal, 981 S.W.2d at
863-64. We therefore do not consider Broussard’s extrinsic evidence about the
pleadings of the underlying case. See Landmark Chevrolet, 121 S.W.3d at 891;
Tri-Coastal, 981 S.W.2d at 863-64. 
 
Cross-Issue: Scope of Coverage
          In its cross-issue, National Union contends that the trial court should have
granted National Union’s original summary judgment on its alternative ground that
Broussard and KCB’s claims are not within the scope of the coverage under the D&O
policy. We hold that the trial court properly granted National Union’s supplemental
motion for summary judgment based on the policy exclusions. We therefore need not
address whether Turner’s petition alleges wrongful acts that afford D&O coverage
under the policy under circumstances in which the two exclusions do not apply. 
Conclusion
          Under the eight corners rule, National Union’s duty to defend depends on the
allegations in Turner’s petition and the scope of coverage established in the D&O
policy. We hold that trial court properly granted National Union’s motion for
summary judgment based on the contractual liability and prior litigation policy
exclusions. We therefore affirm the judgment of the trial court. 





                                                                        Jane Bland
                                                                        Justice
 
Panel consists of Justices Taft, Jennings, and Bland.