

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| STEPHEN L. MITCHELL, JANIE MITCHELL BELEW, LISA MITCHELL SEIGMANN, and LINDA MITCHELL STAPLETON, | § | |
| | § | No. 08-17-00155-CV |
| | § | Appeal from the |
| Appellants, | § | 143rd District Court |
| v. | § | of Reeves County, Texas |
| MAP RESOURCES, INC., PECOS BEND ROYALTIES, LLP, PBR PROPERTIES JOINT VENTURE, and TOMMY VASCOCU, | § | (TC# 15-06-21057-CVR) |
| Appellees. | | |

**<u>CONCURRING OPINION</u>**

I join the Court's judgment, but not for all the reasons stated in the majority opinion. I also write separately to express dissatisfaction with the bar to considering extrinsic evidence in a collateral attack to a judgment when there is a failure of service. The rule should be reexamined, or at least open to an additional exception: When a judgment is based on an express representation that a party performed a diligent review of public records to support an alternative form of service, those public records should be considered in a collateral attack to the judgment.

## I. BACKGROUND

Not to put too fine a point on it, but to anyone who values property rights and due process, the facts of this case are troubling.

In July 1998, the Pecos-Barstow-Toyah Independent School District, Reeves County, and the Reeves County Hospital District (the Taxing Entities) in one cause number, filed suit against some 673 persons and entities for delinquent property taxes incurred between 1978 and 1998. The Original Petition does not individually name the defendants, other than to incorporate an attached fifty-two page list of named mineral interests that in some instances also includes the corresponding lease operators, property descriptions, and named property owners.[1] The spread sheet is arranged alphabetically—by *first* name—and appears to be a combination of two lists such that the "A's" start all over again part way through the document. So, if one was looking to see if "John Smith" had been sued, you would look under the "J's" (and not the "S's") in one of two places on the document. There is no explanation of that fact on the exhibit—you would have to figure it out on your own. From the exhibit, it is apparent that the properties are all mineral interests. The exhibit lists over 1,200 properties, and includes 673 property owners, 152 of which are simply listed as "unknown."

In December 1998, the attorney for the Taxing Entities filed a pleading attesting that each of the property owners on the list were either (1) non-residents of the State, (2) absent from the State, (3) transients, or (4) unknown and their identity could not be ascertained after diligent inquiry. The affidavit provides no specific information as to any specific property or defendant, nor does it state any specific fact supporting the conclusions the affiant reached. The pleading further states that if a rendition was filed in the previous five years with the appraisal district office

---

[1] Appellant states that the original spreadsheet is 28 pages long. In our record, however, it runs from pages 7 to 61 of the first volume of the Clerk's Record. Appellant also states the list has about 250 persons. By my count, however, there are 521 distinctly named persons or entities and 152 properties with "unknown" owners.

that shows the address for any record owners, the Taxing Entities "caused citation to issue for personal service on such Defendant(s) at the address shown on said rendition list and has attempted to secure service thereof, but has not been able to do so." The trial court's file, however, contains no citations for personal service that was issued for any of the 673 defendants. The purpose of the affidavit was to obtain service through posting notice of the suit on the courthouse door under Rule 117a. Thereafter, a two page notice to "DEFENDANTS" was posted by a sheriff at the Reeves County courthouse. The fifty-two-page list of properties and owners was attached to that notice.

The trial court appointed an attorney-ad-litem to protect the interests of the defendants. The first attorney appointed served two months before seeking to withdraw based on a conflict of interest. Other than to file the motion to withdraw, the docket sheet does not reflect the attorney-ad-litem did anything else. A second attorney-ad-litem was appointed eight days before the "trial" of the case.[2] The trial proceedings are reflected only by a "Statement of Evidence" signed by the trial judge.[3] As to the issue of service of process, that statement reflects:

> Plaintiffs [sic] witness, being sworn, testified to a search of the public records of the County and where such records showed the address of any Defendant(s), citation was issued for personal service on such Defendant(s) at such address in an attempt to secure service thereof, but was unserved, except to the extent recited in the judgment in this cause. The witness further testified that an inquiry was made of the person(s) in possession of the land and those persons in the community who might reasonably be expected to know the whereabouts of such defendant(s). And the Court being of the opinion that diligent inquiry had been made.

---

[2] The case was set for trial on the same day as six other suits filed by the same Taxing Entities.

[3] The Buyers claim that the Mitchell children failed to bring forth a complete record, suggesting that there is a transcription of the actual proceedings of the "trial" in this case. They point to nothing in the record that shows a court reporter in fact took a transcription of the proceeding. The Government Code requires that "[o]n request" an official court reporter shall attend all sessions of court and "take full shorthand notes of oral testimony offered before the court[.]" TEX. GOV'T CODE ANN. § 52.046(a)(1), (2). Nothing in the court file reflects that a court reporter was requested to take a record of this proceeding. And even if so, the court reporter is only required to "preserve the notes for future reference for three years from the date on which they were taken[.]" *Id*. at § 52.046(a)(4). It is not clear to me that the Mitchell children have failed to bring forth any part of the record that either existed or was available to them.

The identity of the witness is unstated, and despite testifying that he or she searched the public record, made inquiry into the community, and then issued citation for personal service on anyone for whom an address was found, *not a single* citation for personal service for any of the 673 defendants can be found in the file. Had a citation for personal service actually been issued, the district clerk would be required to keep it with the file under TEX.R.CIV.P. 99. Nor does the docket sheet reflect the issuance of any citation for personal service. Of all the defendants identified on the attachment to the petition, the docket sheet shows that only two appeared through counsel. The "Statement of Evidence" also mentions that any personally served defendant would be identified in the judgment, but the judgment identifies no such person.

The trial court's three-page judgment also does not name any particular defendant, but grants judgment against the persons or entities identified on an attached fifty-eight page list of persons or entities (which is different from the attachment to the original petition). The judgment was for no less than 5 percent of the total taxes due at the time of judgment, along with a $150 abstract fee per defendant. The list identifies the tax liability of each person and entity. On that list, Elizabeth Mitchell had a listed tax liability of $940.20.

At the sheriff's sale, all the mineral interests were sold for a total of $119.389.45, of which $43,693.47 was remitted to the taxing authorities, $52,495.28 was paid in abstract fees, and $2,440.96 was paid in court costs and sheriff's fees. The remaining total sum of $20,759.74 was returned as excess over the judgment amount.

Sixteen years later Elizabeth Mitchell's children filed this suit to set aside the Sheriff's sale. The Mitchell children named Map Resources, Inc., Pecos Bend Royalties, LLP, PBR Properties Joint Venture, and Tommy Vascocu as defendants because they were the buyers at the sheriff's sale (or their successors in interest). I collectively shorthand them as the Buyers. The suit

alleged that Ms. Mitchell died in 2009 and devised her property to her four children. They attached to their suit, and later proved up with certified copies, eight warranty deeds that been on file in the Reeves County deed records since 1983 that showed her ownership of the property that was subject to the Taxing Entities' earlier lawsuit. The deeds stated her address as a P.O. Box in Van Horn, Texas. The gist of the Mitchell children's argument is that Elizabeth Mitchell's ownership and address was of public record and the Taxing Entities failed to make any attempt to personally serve her with the lawsuit. Instead, the Taxing Entities selected a method of service designed not to provide notice of the lawsuit, or at least one that was invalid under TEX.R.CIV.P. 117a. As such, they claim the judgment in the tax suit was void as to Mitchell and the sheriff's sale must be set aside.

After the Buyers answered, both sides filed competing motions for summary judgment. The trial court granted the Buyers' motion. Through several issues, the Mitchell children complain on appeal that the trial court erred in granting the Buyers' motion for summary judgment, and in denying their motion for summary judgment.

## II. If the Deeds are Considered, the Mitchell Children Assert a Viable Due Process Claim

The Due Process Clause prevents the government from depriving a person of his or her "property, without due process of law[.]" U.S. Const., Amend. XIV, § 1. Before a court may exercise its power to deprive someone of property, it must provide for "notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). Notice must be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 84 (1988), *quoting Mullane,* 339 U.S. at 314; *see also Cunningham v. Parkdale Bank,* 660 S.W.2d 810, 813 (Tex. 1983)

5

("procedural due process requires notice that is reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests.") (internal quotes omitted); *Hamm v. Robinson*, 314 S.W.3d 204, 209 (Tex. App.--El Paso 2010, no pet.) ("As an elementary and fundamental requirement, our system of justice comprehends due process to include notice and an opportunity to be heard by interested parties to the action.").

Two United States Supreme Court cases highlight the principle. The issue in *Mullane v. Central Hanover Bank & Trust* was whether notice to beneficiaries of a trust, accomplished by publication in a local newspaper in strict compliance with an applicable banking law, was sufficient to support a judicial settlement of the trust under the Due Process Clause of the United States Constitution. 339 U.S. at 309–10. At the outset, the Court noted that "Personal service of written notice within the jurisdiction is the classic form of notice always adequate in any type of proceeding." *Id.* at 313. Yet the Court acknowledged that personal service might not always be possible, nor constitutionally required.[4] *Id*. at 314. Nonetheless, "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* In *Mullane*, the Court acknowledged that notice by publication was not a "reliable means of acquainting interested parties of the fact that their rights are before the courts." *Id.* at 315. "Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper,

---

[4] As the Court stated:
> This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights.

339 U.S. at 317.

and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed." *Id.* Ultimately, the Court upheld the notice by publication for those beneficiaries whose interests or addresses were unknown to the trustee. *Id.* at 318. But as to known beneficiaries, with a known address, notice by publication "stands on a different footing." *Id.* Those beneficiaries deserved at least a mailing to their address apprising them of the trust settlement. *Id.*

Thirty-three years later, the Court expanded on *Mulane* in *Mennonite Board of Missions v. Adams,* 462 U.S. 791 (1983). Similar to our case, in *Mennonite* a landowner failed to pay property taxes and the county began proceedings to sell the property. *Id.* at 794. State law only required that notice be posted at the local courthouse and published for three consecutive weeks in a newspaper. *Id.* at 793. The county complied with that procedure and auctioned off the property. *Id.* The mortgage holder for the landowner did not learn of the tax sale until after a two-year redemption period expired. *Id.* at 794. The mortgage holder challenged the tax sale aside, arguing that publication of notice of the tax sale was constitutionally inadequate. *Id.* at 795.

The Court agreed, writing that "unless [the interested party] is not reasonably identifiable, constructive notice [by publication] alone does not satisfy the mandate of *Mullane*." *Id.* at 798. The identity of the landowner and mortgage holder was known, and the Court assumed an address could have been ascertained by reasonably diligent efforts. *Id.* at 798 n.4. "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party . . . if its name and address are reasonably ascertainable." *Id.* at 800; *see also Schroeder v. New York,* 371 U.S. 208, 211 (1962) (landowner whose name and address were on the deed records and tax rolls was entitled to more than service by publication because notice by publication "did not measure up to the quality of

7

notice" demanded by the Due Process Clause); *Walker v. City of Hutchinson,* 352 U.S. 112, 116 (1956) (publication of notice of condemnation deprived landowner of due process in condemnation proceeding, where landowner's "name was known to the city and was on the official records" and there was "no compelling or even persuasive reasons why such direct notice cannot be given").

And in the context of protected parental rights, our own Supreme Court held that serving the parent in a newspaper advertisement is not constitutionally acceptable "when the State knew the mother's identity, was in regular contact with her, and had at least one in-person meeting with her after it sued to terminate the legal rights to her children." *In re E.R.*, 385 S.W.3d 552, 554–55 (Tex. 2012). Service by publication in that instance was a "poor, hopeless, and unjustifiable" alternative, that violated due process. *Id.* "We have said that '[i]f personal service can be effected by the exercise of reasonable diligence, substituted service is not to be resorted to.' " *Id.* at 564, *quoting* S*gitcovich v. Sgitcovich,* 241 S.W.2d 142, 147 (1951).

Our rules of procedure to some measure codify these principles. Rule 106 provides that "[u]nless the citation or an order of the court otherwise directs, the citation shall be served . . . by (1) delivering to the defendant, in person . . . or (2) mailing to the defendant by registered or certified mail [the citation and petition]." TEX.R.CIV.P. 106(a). Additional requirements are necessary if a litigant seeks to use an alternative form of service. *See* TEX.R.CIV.P. 106(b) (motion and affidavit required to leave petition with someone else at the address); TEX.R.CIV.P. 109 (stating requirements for citation by publication); TEX.R.CIV.P. 109A (stating requirements for substitute service). And relevant to a suit for delinquent ad valorem taxes, Rule 117a specifies this hierarchy for service of process:

> (1) A Texas resident not subject to citation by publication for the reason noted below, is entitled to personal service. TEX.R.CIV.P. 117a(1).

(2) If the defendant is (a) nonresident of the State, (b) absent from the State, (c) is a transient person, or (d) the name or the residence of any owner is unknown, the taxing unit's attorney can make affidavit to that effect, based on diligent inquiry, and serve the suit by publication. TEX.R.CIV.P. 117a(3).

(3) If the taxing unit cannot obtain publication at the lowest published word or line rate of that newspaper for classified advertising, then service of the citation may be made by posting a copy at the courthouse door of the county in which the suit is pending. TEX.R.CIV.P. 117a(3).

If we consider the eight deeds as part of our record, the Mitchell children presented evidence that shows the Taxing Entities did not comply with Rule 117a. Elizabeth Mitchell was not personally served; the only evidence for service is through the posting on the courthouse door. The predicate for that type of service required the Taxing Entities to make a "diligent inquiry" into Elizabeth Mitchell's address. And while the Taxing Entities' attorney "testified to a search of the public records of the County" looking for addresses, that search somehow overlooked Elizabeth Mitchell's address that was contained in the eight recorded warranty deeds.[5][6]  As the Mitchell children note, "An instrument that is properly recorded in the proper county is . . . notice *to all persons* of the existence of the instrument[.]" TEX. PROP. CODE ANN. § 13.002 (emphasis added).

Of course, not all defects in service of process rise to the level of a due process violation. *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 273 (Tex. 2012). The court in *Rivera*, for instance,

---

[5] The Buyers suggest that while the deeds might be public records, we have no assurance they were *the* public records the Taxing Entities reviewed prior to seeking alternative service. I find that argument unpersuasive. There are indeed a wide range of public records—driver's license numbers, library cards, voter's registrations, etc. And while it is true the conclusory affidavit and summary of testimony do not state what public record the Taxing Entities reviewed, it is hard to imagine how a search for the owner of real property would not include the county deed records where record ownership of property is kept.

[6] Respectfully, I disagree with my colleague's conclusion that the Mitchell children have no evidence that the Post Office Box number listed on the deeds was in fact Ms. Mitchell's mailing address at the time the Taxing Entities filed their suit. The deeds were filed in 1983 and the tax judgment was signed in 1999. But the point is that had the Taxing Entities actually checked the public record, as their lawyer and witness swore, they would have seen the address. And had they done what they swore they did—attempt service—there would have been at least an issued citation, and likely some record of the failure of that attempted service, in the court's file. And were that the case, there might be some valid basis for the alternate form of service used. But because no record of the issuance of any citation exists where the rules would require it to exist, the Mitchell children have raised a fair inference the Taxing Entities representation about checking public records was false, or at least inadequately performed.

outlines several technical defects in a citation that was actually delivered to the defendant which did not implicate a due process violation. *Id.* But that situation is not the case here where there is no citation for personal service to examine for technical defects. The failure here rises to the level of a due process violation because it questions the due diligence that the Taxing Entities were required by rule and due process to exercise. "A diligent search must include inquiries that someone who really wants to find the defendant would make, and diligence is measured not by the quantity of the search but by its quality." *In re E.R.,* 385 S.W.3d at 565. When litigants neglect to pursue "obvious inquiries" that would allow for personal service, this Court has invalidated judgments based on alternate means of service. *See Curley v. Curley*, 511 S.W.3d 131, 135 (Tex. App.--El Paso 2014, no pet.) (failure to obtain defendant's address through relatives, and internet search, invalidated service by publication); *Robb v. Horizon Communities Improvement Ass'n, Inc.*, 417 S.W.3d 585, 591 (Tex. App.--El Paso 2013, no pet.) (default judgment reversed when plaintiff relied on service by publication despite having P.O. Box address for defendant). The State cannot pick an inferior method of service when a better one is possible. *See In re E.R.*, 385 S.W.3d at 561 ("One thing is clear: service by publication should be a last resort, not an expedient replacement for personal service.").

The deeds also undermine another defense raised by the Buyers: the presumption of validity in every judgment. "Recitations in a judgment create a presumption of regularity and truthfulness, absent an affirmative showing to the contrary." *In re Borunda*, 528 S.W.3d 149, 151 n.1 (Tex. App.--El Paso 2017, orig. proceeding). "But that presumption disappears when the record establishes a jurisdictional defect." *Rivera*, 379 S.W.3d at 273. The general observation that of 673 defendants not a single one had an identifiable address raises the eyebrow, but the eight deeds show that as to Elizabeth Mitchell, the Taxing Entities failed to do what they claimed they

10

did. Thus, the recitation in the judgment that the Taxing Entities exercised due diligence in identifying her address rings hollow, and the presumption of regularity vanishes.

### III. But Existing Precedent Precludes Considering Extrinsic Evidence

The Buyers remind us, however, that Texas courts have long held (and recently reiterated) that extrinsic evidence cannot be used to collaterally attack a judgment. *See In the Interest of D.S.*, 602 S.W.3d 504, 510 n.11 (Tex. 2020) ("Subject to limited exceptions, this Court has held that courts are prohibited from considering extrinsic evidence in a collateral attack on a final judgment.") *citing Templeton v. Ferguson*, 89 Tex. 47, 33 S.W. 329, 332-33 (1895) and *Crawford v. McDonald*, 88 Tex. 626, 33 S.W. 325, 328 (1895).

The Texas Supreme Court discussed the "no-extrinsic-evidence" rule in *York v. State*, 373 S.W.3d 32, 41–42 (Tex. 2012). Chief Justice Hecht set out the rationale for the rule by quoting from the 1895 *Crawford* opinion:

> Therefore it is well settled that, where a personal judgment has been rendered against a defendant by a domestic court of general jurisdiction, and under the same his property has been seized and sold, he will not, in a contest over the title to the property, be allowed to show by evidence dehors the record that the judgment was rendered without any service whatever upon him. Logically, the judgment is, in fact, void, but on grounds of public policy the courts, in order to protect the property rights, apply the rule aforesaid, which precludes inquiry into facts dehors the record for the purpose of showing the invalidity of the judgment; and therefore, for all practical purposes, in such collateral attack, the judgment is held valid.

33 S.W. at 328. The same year *Crawford* was decided, the court outlined a series of exceptions to the rule:

> "[T]here are classes of cases over which a court has not, under the very law of its creation, any possible power; e.g. an administration upon the estate of a living person, administration upon the estate of a deceased soldier when prohibited by statute, an administration in bankruptcy upon the estate of a person deceased before the institution of the proceedings, a suit for divorce in a foreign country in which neither of the parties is domiciled, or a suit to recover against a nonresident, upon service by publication, a purely personal judgment. In such cases the entire proceedings are coram non judice. The law raises no presumptions in their support, and the facts bringing any particular case within one of such classes may be

11

established by evidence dehors the record, either in a direct or collateral attack, for the purpose of destroying the apparent binding force of such proceedings.

*Templeton*, 33 S.W. at 332.  None of these enumerated exceptions are claimed to apply here.

Chief Justice Hecht added in *York*, however, that "Whether distinctions in these cases are or should be material is, we acknowledge, arguable, *as is the no-extrinsic-evidence rule itself*. *York*, 373 S.W.3d at 41–42 (emphasis supplied).  The *York* court then quoted a comment from the *Restatement (Second) of Judgments* that explains:

> The modern rule is that a judgment may be impeached by evidence that contradicts the record in the action. Concern for protecting judgments from contrived attacks is considered adequately served by requiring that an attack based on extrinsic evidence be brought in an appropriate forum and that it be sustained by more than ordinarily persuasive evidence.

Restatement (Second) of Judgments § 77 cmt. a (1982).

The specific issue in *York* was whether the court could consider evidence of a bankruptcy filing that triggered the automatic stay, and thus divested a Texas state court of jurisdiction to issue the judgment that it did.  The *York* court found no need to reexamine the collateral evidence rule, nor create a new exception, because it held the evidence of the bankruptcy filing fell under an existing exception.  *York*, 373 S.W.3d at 42 ("But we have not been asked to reconsider the rule here, nor need we attempt to define exceptions with greater certainty.  This case fits comfortably under *Templeton'*s exclusion from the rule of 'cases over which a court has not, under the very law of its creation, any possible power[.]'").

The Mitchell children approach the "no-extrinsic-evidence" rule in two ways.  First, they cite to cases where extrinsic evidence was considered.  But one of the cases they cite is a direct attack on a judgment, and not a collateral attack.  *Sec. State Bank & Tr. v. Bexar County*, 397 S.W.3d 715, 718 (Tex. App.--San Antonio 2012, pet denied) (direct attack on judgment filed in 2010 attacking 2009 final judgment).  We draw a distinction between direct and collateral attacks

12

because a presumption of correctness attaches to the later, but not the former. *Rivera*, 379 S.W.3d at 273; *Robb*, 417 S.W.3d at 590. Another case they cite is a suit to quiet title following a *non-judicial* foreclosure. *Ocwen Loan Servicing, LLC v. Gonzalez Fin. Holdings, Inc.*, 77 F. Supp. 3d 584, 588 (S.D. Tex. 2015), *aff'd sub nom. Ocwen Loan Servicing, L.L.C. v. Moss*, 628 Fed. Appx. 327 (5th Cir. 2016)(unpublished). The third case they rely on does not address the issue of *what* evidence might be considered in deciding if the method of service violates due process, but rather *whether* there was such a violation. *Schroeder v. City of New York*, 371 U.S. 208, 211 (1962).

Second, the Mitchell children in effect ask us to consider the deed records as an exception to the no-extrinsic-evidence rule. They contend that because the Taxing Entities explicitly referenced a review of "public records" as a part of their due diligence to justify alternative service, those public records are part of the underlying record of the case that might be considered. The argument would in effect treat the public records as materials "incorporated by reference," a concept which courts are well acquainted with, but in other contexts. *See In re D. Wilson Const. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (in the context of arbitration agreements, stating "Innumerable contracts are consummated every day in Texas that incorporate other documents by reference."); *B-R Dredging Co. v. Rodriguez*, 564 S.W.2d 693, 696 (Tex. 1978) (in question of statutory construction, recognizing the right to incorporate by reference in one statute the provisions of another statute or law). Considering the deed records as incorporated by reference would parallel a Texas policy that when a party relies on a document, the document itself should be open to inquiry. *Cf.* Tex.R.Civ.P. 166a(f) ("Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."). And the extrinsic material that the Mitchell children put forth here is not some self-serving affidavit, but rather consists of certified copies of public deed records. Cf. Restatement (Second) of Judgments § 77

13

cmt. b (1982) (noting that one concern for extrinsic evidence is the risk of fraudulent affidavits, but the modern rule accommodates this by requiring clear and convincing evidence).

As much as this argument has to offer it, I am reluctant for an intermediate court to create an exception to a 125-year old doctrine based on the few paragraphs of briefing on this issue garnered in the briefing presently before the Court. Generally, it is not the place of an intermediate court of appeals to create new exceptions or create major doctrinal changes. *See Vitro Packaging de Mexico, S.A. de C.V. v. Dubiel*, No. 05-17-00258-CV, 2017 WL 6349708, at *3 (Tex. App.--Dallas Dec. 13, 2017, pet. denied) (mem. op.) (noting that the role of an intermediate court of appeals is not to create exception to method service necessary to comply with The Hague Convention); *Durham v. Children's Med. Ctr. of Dallas*, 488 S.W.3d 485, 495 (Tex. App.--Dallas 2016, pet. denied) (declining to create new tolling doctrine for wrongful-death claims involving the death of a minor); *Martin v. Clinical Pathology Labs., Inc.,* 343 S.W.3d 885, 892 (Tex. App.--Dallas 2011, pet. denied) (judicial exceptions to employment-at-will doctrine must be created by the supreme court); *Burroughs v. APS Intern., Ltd.*, 93 S.W.3d 155, 161 (Tex. App.--Houston [14th Dist.] 2002 pet. denied) ("It is not for an intermediate appellate court to create new causes of action."); *Landmark Chevrolet Corp. v. Universal Underwriters Ins. Co.*, 121 S.W.3d 886, 890–91 (Tex. App.--Houston [1st Dist.] 2003, no pet.) (declining at court of appeals level to create exception to "eight corners rule"). This same rationale was recently expressed by the Dallas Court of Appeals in our same context. *See In Interest of D.S.*, 555 S.W.3d 301, 316–17 (Tex. App.--Dallas 2018) ("We also question the need to continue to apply the no-extrinsic-evidence rule. However, we are not a policy-making court, and the supreme court has not expressly overruled its precedent limiting the circumstances under which extrinsic evidence may be presented in a collateral attack."), *rev'd sub nom. Interest of D.S.*, 602 S.W.3d 504 (Tex. 2020).

Accordingly, because the law presently precludes our consideration of the deed records because they are "extrinsic evidence" I concur in the judgment. Without the deed records, the Mitchell children cannot make out a viable due process challenge.


JEFF ALLEY, Chief Justice

September 29, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

15