Larry YORK d/b/a York Tank
Trucks, Petitioner,

v.

STATE of Texas and Wise County,
Texas, Respondent.

No. 09–0905.

Supreme Court of Texas.

Argued Dec. 6, 2011.

Decided June 29, 2012.

Samuel Clifford Bishop, Bishop & Bishop, Decatur, TX, for Larry York.

Harold Joseph Liller, Law Enforcement Div., Attorney General's Office, David A. Talbot Jr., Consumer Protection, Office of the Attorney General, David S. Morales, Office of the Attorney General of Texas, Deputy First Assistant Attorney General, Clarence Andrew Weber, Kelly Hart & Hallman LLP, Gregory W. Abbott, Attorney General of Texas, Kristofer S. Monson, Assistant Solicitor General, Daniel T. Hodge, First Asst. Attorney General, William J. "Bill" Cobb III, Office of the Attorney General, Austin, TX, James C. Ho, Gibson Dunn & Crutcher LLP, Dallas, TX, for Respondent State of Texas.

Christopher N. Forbis, Sewell and Forbis, Decatur, TX, Thomas M. Michel, Griffith, Jay & Michel, LLP, Fort Worth, TX, for Respondent Wise County.

Justice HECHT delivered the opinion of the Court.

Petitioner sued for a declaration that a final judgment awarding his property to

the State was rendered in violation of the Bankruptcy Code's automatic stay[1] and therefore void. Petitioner also sued for damages for the lost use of his property as a constitutionally compensable taking. We hold that a judgment that violates the automatic stay is void and subject to collateral attack in state court, but that a judicial award of property to the State is not, in these circumstances, a taking. We reverse the judgment of the court of appeals[2] and remand the case to the trial court.

## I

In October 2006, Trooper Tim Godwin of the Department of Public Safety ("DPS"), in his words, "stopped a York water Tanker" in Paradise, Texas, in Wise County.[3] The investigative report by Sergeant David Martinez states that the 1981 M&D model tank trailer was being operated by York Tank Truck, a local oilfield business owned by Larry York. The York name was emblazoned on the side of the trailer. The trailer's registration receipt designated the renewal recipient as York Vacuum, another name for York's business, and listed the trailer's owner as the McNutt Co. in Snyder, Texas.[4] But the trailer had no vehicle identification number (VIN), so Martinez impounded it, as a peace officer is authorized to do by Texas law, which then permits the seized vehicle to be treated as stolen for purposes of custody and disposition.[5]

DPS contacted York, who not surprisingly claimed the trailer was his. Harold McNutt, owner of the McNutt Co., had sold the trailer to York's father in the late 1980s or early 1990s, and York had acquired it when he bought his father's business in 1993. York stated the trailer was his, but that the registration had just not been transferred yet. McNutt *had* in fact assigned title to York, and York had pledged and delivered the original title to the Roscoe State Bank to secure the loan he had used to buy his father's business. DPS did not attempt to contact the McNutt Co.[6] York told DPS he thought

1. 11 U.S.C. § 362 (2012). Section 362 provides that the filing of a bankruptcy petition "operates as a stay ... of ... any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate". *Id.* § 362(a)(3).

2. 298 S.W.3d 735 (Tex.App.-Fort Worth 2009).

3. According to the 2010 census, the population of Paradise is 441 and the population of Wise County is 59,127.

4. According to the 2010 census, the population of Snyder is 11,202.

5. Tex. Transp. Code § 501.158("(a) A peace officer may seize a vehicle or part of a vehicle without a warrant if the officer has probable cause to believe that the vehicle or part: (1) is stolen; or (2) has had the serial number removed, altered, or obliterated. (b) A vehicle or part seized under this section may be treated as stolen property for purposes of custody and

disposition of the vehicle or part."). *See City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 234 (Tex.2011). Knowingly possessing a vehicle without a serial number or permanent identification marking is a Class A misdemeanor, Tex. Penal Code § 31.11(a)(2), but it is an affirmative defense to prosecution that the possessor was "the owner or acting with the effective consent of the owner", *id.* § 31.11(b)(1). *See also id.* § 501.158 31.11(b)(3)(B)(providing a defense for an applicant for an assigned number); *id.* § 501.032 (*providing in part that on proper application the department shall assign a VIN to a trailer when the manufacturer's original die-stamped number has been lost, removed or obliterated*); *id.* § 501.033 (providing, generally, that a person determined to be the owner can apply for an assigned number).

6. David McNutt was by then deceased, but his widow later confirmed by affidavit that he had sold the trailer to York's father, and attached to the affidavit a copy of the title McNutt had endorsed to York.

the VIN plate had been removed and destroyed while the trailer was being repaired. A painter in Snyder later provided an affidavit stating that the VIN plate had been discarded in the process of repainting the trailer. DPS determined that no similar trailer had been reported stolen in Texas.

Though no one but York claimed the trailer, in February 2007 the State petitioned the justice court under Chapter 47 of the Texas Code of Criminal Procedure to determine who should have possession. The State asserted that "each person or company known ... as being a reasonably likely party to have an interest in [the trailer]" was listed in its pleading. The only party listed was York Vacuum Service. Notice of the proceeding was given to York but not to the McNutt Co. York appeared *pro se* and produced registration renewal receipts, inspection records, insurance cards, repair records, and photographs to show that the trailer was his, but he did not and could not produce the title certificate since it was held by the Roscoe State Bank. The only evidence offered by the State was that the VIN was missing. No other evidence was offered to show that this 1981 trailer was stolen property. Following the hearing, the justice court awarded the trailer to the State for use or disposal by the Sheriff of Wise County.[7] The County stored the trailer.

A few days later, York, now with legal counsel, attempted to appeal, but notice of appeal in such proceedings must be given orally at the conclusion of the hearing,[8]

which York did not know to do, and therefore his appeal was untimely. York also filed a bill of review to set aside the judgment, but it was denied.

Years earlier, in January 2003, York had filed for protection under Chapter 13 of the Bankruptcy Code, and that case remained pending in 2007. York scheduled the trailer as an asset of his estate and listed Roscoe State Bank as a secured creditor. York says that he did not inform DPS or the justice court of the bankruptcy case because he did not know until after he retained counsel that it might have afforded him protection from the justice court proceeding. In August 2007, York brought this action against the State and Wise County to declare the justice court judgment in violation of the Bankruptcy Code's automatic stay and therefore void. He also alleged that the defendants had intentionally misused the Chapter 47 proceeding to deprive him of his property and asserted damages for the loss of its use as a compensable taking under Article I, Section 17(a) of the Texas Constitution.[9]

The defendants asserted immunity, and York moved for partial summary judgment on his claim for declaratory relief. The trial court dismissed the case for want of jurisdiction, concluding that the justice court judgment was not void but was only voidable, and only if the bankruptcy court, rather than the state court, determined (i) that the trailer was not stolen but was part of York's estate, and (ii) that the justice court proceeding did not fall within the police power exception to the automatic

---

7. The judgment stated: "IT IS ACCORDINGLY ORDERED, ADJUDGED AND DECREED by the Court that the Plaintiff STATE OF TEXAS, do have and recover of and from the Defendant, the trailer, thereon from the date of this judgment. Item to be awarded to The State of Texas and to be disposed to the Wise County Sheriff Department to be used or disposed with the discretion of the department."

8. Tex.Code Crim. Proc. art. 47.12(c).

9. Tex. Const. art. I, § 17(a) ("No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made....").

stay.[10] The trial court's findings and conclusions did not mention York's takings claim.

A divided court of appeals reversed and remanded.[11] The court held that a judgment rendered in violation of the automatic stay is void, not merely voidable, and that a state court has jurisdiction to make that determination, even though the bankruptcy court might later disagree.[12] But the court also held that a challenge to a judgment based on the automatic stay is subject to the general rule in Texas that a final judgment cannot be collaterally attacked with extrinsic evidence.[13] Nothing in the parts of the justice court record presented as evidence showed that York had filed for bankruptcy, or that the automatic stay affected the proceeding.[14] Because a violation of the automatic stay could be shown only with extrinsic evidence, the court of appeals concluded that the justice court judgment could not be collaterally attacked.[15]

As to York's takings claim, the court of appeals concluded that subsisting fact issues precluded dismissal. "The crux of York's complaint," the court stated, was whether the State and County, "with knowledge that York actually owned the trailer, intentionally utilized [the Chapter 47 proceeding] to divest him of ownership."[16] "A fair reading of his complaint", the court continued, "is that the county, at least, has been using the statute as a means to take physical possession of property owned by private citizens without compensation."[17] The court observed that the defendants' faulty interpretation of Chapter 47 as a forfeiture provision supported York's claim that they were using the statute to take property rather than return it to its rightful owner.[18] So did the facts:

> York has put forth considerable, credible evidence of his ownership of the vehicle, regardless of the missing VIN. [The defendants] have not controverted that evidence. Although from York's affidavit testimony it appears that the evidence he presented to the justice court showed that McNutt Co., rather than York, was the true owner of the property, Sergeant Martinez's testimony does not indicate that he ever contacted or attempted to contact McNutt Co.; he simply concluded that since York could not produce the original VIN plates that the property was "deemed" stolen and that there was no way of ever tracing ownership. McNutt Co. was never served in the ... proceeding or named as an interested party. This is significant because if McNutt Co. were the owner, as evidenced on the DPS registration receipts, and was allowing York to use the property, also as evidenced by the DPS registration receipts, then York would have a superior right to possess the trailer as against [the defendants], regardless of whether the trailer was deemed stolen or not. It seems logical that if DPS were acting in furtherance of the true purpose of [Chapter 47], to

---

**10.** 11 U.S.C. § 362(b)(4) (2012).

**11.** 298 S.W.3d 735 (Tex.App.-Fort Worth 2009).

**12.** *Id.* at 745.

**13.** *Id.* at 746–747.

**14.** *See* Tex.R. Civ. P. 525 (providing for oral pleadings in justice court).

**15.** 298 S.W.3d at 747.

**16.** *Id.* at 750.

**17.** *Id.*

**18.** *Id.* at 750–751.

return property to its rightful owner, that Sergeant Martinez would at least have included McNutt Co. in his investigation. The evidence that he contacted York instead, coupled with York's allegations (and [defendants'] admissions that [they] are treating [Chapter 47] as a forfeiture statute), is enough to at least raise a fact issue sufficient to survive appellees' jurisdictional challenge to York's alleged takings claim.[19]

The court also concluded that because the justice court judgment authorized the County to use or dispose of the trailer in its discretion, a fact issue remained whether the trailer had been taken for a public purpose.[20] The dissent argued only that York's taking claim was precluded by the justice court's determination that he did not own the trailer.[21]

York, the State, and the County each petitioned for review. We granted all three petitions.[22] We turn first to York's declaratory judgment claim, then to his takings claim.[23]

## II

All agree that to have the justice court judgment set aside, York must show that a judgment issued in violation of an automatic stay provided by the Bankruptcy Code is void, that such a judgment is subject to collateral attack, even if the existence of the stay must be established by extrinsic evidence, and that the justice court judgment at issue in this action violated the automatic stay arising from York's bankruptcy proceedings. We conclude that York is correct on the first two matters but that fact questions remain on the third.

## A

We have considered the effect of actions taken in violation of the automatic stay in only two cases. In *Continental Casing Corp. v. Samedan Oil Corp.*, an oil well operator, Samedan, ordered casing from Misco Supply Co., which subcontracted the order to Continental.[24] Continental delivered the casing to Samedan and billed Misco, but Misco declared bankruptcy.[25] So Continental sued Samedan, claiming a

---

**19.** *Id.* at 751–752 (footnotes and citations omitted).

**20.** *Id.* at 753.

**21.** *Id.* at 754 (Cayce, C.J., dissenting).

**22.** 54 Tex.Sup.Ct.J. 1548 (Aug. 19, 2011).

**23.** The State and County do not argue that only the bankruptcy trustee has standing to assert York's claims. When a Chapter 13 plan is confirmed, as York's was in 2005, all property of the bankruptcy estate vests in the debtor except as otherwise provided by the plan. 11 U.S.C. § 1327(b)(2012). Unlike a Chapter 7 proceeding in which a debtor's assets are liquidated to pay debts, a Chapter 13 plan allows a debtor to keep his assets and use earnings to pay debts over time, usually three to five years. *Compare id.* § 721 *with id.* § 1322. Because of this feature of Chapter 13, federal circuit courts generally hold that the debtor has standing to sue on causes

benefitting the estate. *See Smith v. Rockett,* 522 F.3d 1080, 1081–1082 (10th Cir.2008); *Crosby v. Monroe Cnty.,* 394 F.3d 1328, 1331 n. 2 (11th Cir.2004); *Cable v. Ivy Tech State Coll.,* 200 F.3d 467, 472–474 (7th Cir.1999); *Olick v. Parker & Parsley Petroleum Co.,* 145 F.3d 513, 515–516 (2d Cir.1998); *Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1209 n. 2 (3d Cir.1992). State courts appear to be in accord. *See Ex parte Moore,* 793 So.2d 762, 765 (Ala.2000); *Kelsey v. Waste Mgmt. of Alameda Cnty.,* 76 Cal.App.4th 590, 90 Cal.Rptr.2d 510, 514 (1999); *Dance v. La. State Univ. Med. Ctr.,* 749 So.2d 870, 873 (La.Ct.App.1999). *See also* 8 COLLIER ON BANKRUPTCY ¶ 1303.04 (16th ed.2011) ("[T]he right to bring a lawsuit ... is implicit in section 1306(b), which allows the debtor to retain possession of all property of the estate....").

**24.** 751 S.W.2d 499, 500 (Tex.1988) (per curiam).

**25.** *Id.*

lien for the amount due for the casing.[26] Samedan responded that it had offset the amount it owed Misco for the casing against other amounts Misco owed it, and therefore owed Continental nothing.[27] Continental countered that the offset was prohibited by the automatic stay. The court of appeals held that Samedan's offset, if in violation of the automatic stay, was not void but only voidable, and only if challenged by the bankruptcy trustee.[28] We disagreed, stating that "[a]n action taken in violation of the automatic stay is void, not merely voidable." [29] Four years later, in *Howell v. Thompson,* we held, citing only *Continental Casing,* that an appeals court's issuance of an opinion and judgment in violation of the automatic stay "was void".[30]

In *Continental Casing,* we relied on the United States Supreme Court's decision in *Kalb v. Feuerstein.*[31] There, a Wisconsin state court had ordered foreclosure on the property of farmers who were debtors in bankruptcy.[32] The Frazier–Lemke Farm Bankruptcy Act provided that foreclosure proceedings

> shall not be instituted, or if instituted at any time prior to the filing of a petition under this [Act], shall not be maintained, in any court or otherwise, against the farmer or his property, at any time after the filing of the petition under this section, and prior to the confirmation or other disposition of the composition or

extension proposal by the [bankruptcy] court. . . .

> \* \* \*

> The prohibitions . . . shall apply to all judicial or official proceedings in any court or under the direction of any official, and shall apply to all creditors, public or private, and to all of the debtor's property, wherever located.[33]

When the debtors sued in state court to collaterally attack the foreclosure judgment, the court dismissed their complaints, and the Supreme Court of Wisconsin affirmed.[34]

The United States Supreme Court held that the foreclosure judgment "was beyond [the state court's] power, void, and subject to collateral attack." [35] Noting that while "[i]t is generally true that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack",[36] the Supreme Court stated: "Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally." [37] Congress, the Supreme Court concluded, had done in the Bankruptcy Act what it was empowered to do, thereby depriving the Wisconsin court "of all jurisdiction or power to proceed with the fore-

26. *Id.*

27. *Id.*

28. *Id.* at 501.

29. *Id.*

30. 839 S.W.2d 92, 92 (Tex.1992) (order).

31. 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940).

32. *Id.* at 435–436, 60 S.Ct. 343.

33. *Id.* at 440–441, 60 S.Ct. 343.

34. *Id.* at 436–437, 60 S.Ct. 343.

35. *Id.* at 438, 60 S.Ct. 343.

36. *Id.*

37. *Id.* at 438–439, 60 S.Ct. 343.

closure, the confirmation of the sale, the execution of the sheriff's deed, the writ of assistance, and the ejection of appellants from their property".[38]

The State and County argue that *Kalb* is no longer controlling precedent because the law has changed and the bankruptcy court is now authorized not only to modify or terminate the automatic stay but also to annul it,[39] retroactively vitiating its prohibition,[40] something the bankruptcy court could not do at the time *Kalb* was decided. By annulling the stay, their argument continues, the bankruptcy court can now in effect ratify an act done in violation of the stay, and under Texas law, an act that can be ratified cannot be void.[41] But in annulling a stay to give a judgment validity it lacked when rendered, the court need not necessarily ratify the judgment in the sense of approving it on the merits. In one case, for example, a bankruptcy court annulled the stay merely to validate a notice of appeal so that an appeal could be prosecuted, without regard to its merits.[42]

 Moreover, treating an action in violation of the automatic stay as void is more consistent with its purpose of providing debtors a "breathing spell".[43] One court has explained:

Either the debtor must affirmatively challenge creditor violations of the stay, or the violations are void without the need for direct challenge. If violations of the stay are merely voidable, debtors must spend a considerable amount of time and money policing and litigating creditor actions. If violations are void, however, debtors are afforded better protection and can focus their attention on reorganization.

Given the important and fundamental purpose of the automatic stay and the broad debtor protections of the Bankruptcy Code, we find that Congress intended violations of the automatic stay to be void rather than voidable.[44]

Another has echoed:

Treating an action taken in contravention of the automatic stay as void places the burden of validating the action after the fact squarely on the shoulders of the offending creditor. In contrast, treating an action taken in contravention of the automatic stay as voidable places the burden of challenging the action on the offended debtor. We think that the former paradigm, rather than the latter, best harmonizes with the nature of the

**38.** *Id.* at 443, 60 S.Ct. 343.

**39.** 11 U.S.C. § 362(d) ("On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay [in specified circumstances].")

**40.** *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir.1989); *Soares v. Brockton Credit Union*, 107 F.3d 969, 976–977 (1st Cir.1997); *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 109 (9th Cir.1995); *In re Siciliano*, 13 F.3d 748, 751 (3d Cir.1994).

**41.** *Brazzel v. Murray*, 481 S.W.2d 801, 803 (Tex.1972) ("A void act is one entirely null within itself, not binding on either party, and which is not susceptible of ratification or confirmation. Its nullity cannot be waived." (internal quotation marks omitted)).

**42.** *In re Hoffinger Indus., Inc.*, 329 F.3d 948 (8th Cir.2003).

**43.** *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 540 (5th Cir.2009) ("The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors." (quoting S.Rep. No. 95–989, at 49 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6010)).

**44.** *In re Schwartz*, 954 F.2d 569, 571 (9th Cir.1992).

automatic stay and the important purposes that it serves.[45]

We agree, as do most of the federal circuit courts that have considered the issue,[46] and would add only that the automatic stay protects not only the debtor but other creditors of the estate as well.

The Fifth Circuit is not in the majority, as reflected in its decision in *Sikes v. Global Marine, Inc.*,[47] with which we have previously noted our disagreement.[48] There, plaintiffs filed a personal injury action a few weeks before limitations was to run, but before they could serve the defendant, they learned it was in bankruptcy.[49] The bankruptcy court modified the automatic stay to allow the action to proceed, but the defendant argued that the original filing was void and that plaintiffs could only refile the action, which was by then barred by limitations.[50] The district court agreed, but the court of appeals reversed.[51] Because the bankruptcy court could annul the stay, and because the Bankruptcy Code provided that some actions in violation of the stay were not automatically invalid, the court concluded that the plaintiffs' filing was only voidable, not void, and was rehabilitated by the modification of the stay.[52] The court distinguished *Kalb*, as the State and County do here, by noting that the

power to annul the stay did not exist when the Supreme Court decided that case.[53]

We respectfully disagree that the distinction is valid. *Kalb* squarely held that Congress acted to deny courts jurisdiction to render judgment in violation of the automatic stay. The automatic stay in bankruptcy is for this reason different, for example, from a stay of proceedings pending appeal which merely stops a court with jurisdiction from proceeding.[54] We do not think that by authorizing the bankruptcy court to annul the stay, Congress broadened all courts' jurisdiction to violate it. No one doubts that the bankruptcy court can retroactively grant relief from the stay. The issue is whether a judgment that violates the stay is nevertheless valid unless the debtor seeks enforcement of a stay that is supposed to be automatic, or invalid unless the creditor obtains relief from the stay. We agree with most courts that the latter view is correct.

We agree with the result in *Sikes*. By modifying the stay, the bankruptcy court validated the plaintiffs' original filing. But until the modification, we think the filing was void. In our view, the bankruptcy court's authority to grant relief did not change the character of the action the stay prohibited. Accordingly, we adhere to the rule we stated in *Continental Casing*.

---

45. *Soares*, 107 F.3d at 976.

46. *Id.; In re Schwartz*, 954 F.2d 569, 571 (9th Cir.1992); *In re Calder*, 907 F.2d 953, 956 (10th Cir.1990) (per curiam); *In re 48th St. Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir. 1987); *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir.1984). *But see Sikes*, 881 F.2d at 178; *Bronson v. United States*, 46 F.3d 1573, 1578 (Fed.Cir.1995); *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir.1993).

47. 881 F.2d 176 (5th Cir.1989); *accord In re Coho Resources, Inc.*, 345 F.3d 338, 344 (5th Cir.2003).

48. *Roccaforte v. Jefferson Cnty.*, 341 S.W.3d 919, 923 n. 7 (Tex.2011) (citing *Kalb* and noting conflict between *Continental Casing* and *Sikes* ).

49. *Sikes*, 881 F.2d at 177.

50. *Id.* at 177–179.

51. *Id.* at 178.

52. *Id.* at 178–179.

53. *Id.* at 179 n. 2.

54. *Roccaforte*, 341 S.W.3d at 923–924.

## B

▮ A judgment void on its face is subject to collateral attack, but in *Crawford v. McDonald,* we held that for reasons of public policy, a judgment rendered by a court without jurisdiction cannot be collaterally attacked with extrinsic evidence:

> Logically, it can make no difference as to the validity of the judgment whether the lack of jurisdiction of the person or the subject-matter appears from the face of the record or is made to appear by evidence aliunde; for if, for instance, no service was had upon the defendant, he not appearing in the case, the court, having no jurisdiction whatever over his person, is absolutely without power to bind him by an adjudication that he had been in fact duly served; and, logically, this want of power is the same whether the lack of jurisdiction appears on the face of the record or not. There is, however, another rule of law, equally well settled upon principles of public policy, which precludes inquiry by evidence aliunde the record in a collateral attack upon a judgment of a domestic court of general jurisdiction, regular on its face, into any fact which the court rendering such judgment must have passed upon in proceeding to its rendition. Therefore it is well settled that, where a personal judgment has been rendered against a defendant by a domestic court of general jurisdiction, and under the same his property has been seized and sold, he will not, in a contest over the title to the property, be allowed to show by evidence dehors the record that the judgment was rendered without any service whatever upon him. Logically, the judgment is, in fact, void, but on grounds of public policy the courts, in order to protect the property rights, ap-

ply the rule aforesaid, which precludes inquiry into facts dehors the record for the purpose of showing the invalidity of the judgment; and therefore, for all practical purposes, in such collateral attack, the judgment is held valid.[55]

But as we explained only a month later in *Templeton v. Ferguson,* there are exceptions:

> [T]here are classes of cases over which a court has not, under the very law of its creation, any possible power; e.g. an administration upon the estate of a living person, administration upon the estate of a deceased soldier when prohibited by statute, an administration in bankruptcy upon the estate of a person deceased before the institution of the proceedings, a suit for divorce in a foreign country in which neither of the parties is domiciled, or a suit to recover against a nonresident, upon service by publication, a purely personal judgment. In such cases the entire proceedings are coram non judice. The law raises no presumptions in their support, and the facts bringing any particular case within one of such classes may be established by evidence dehors the record, either in a direct or collateral attack, for the purpose of destroying the apparent binding force of such proceedings.[56]

*Crawford* and *Templeton* both rejected collateral attacks of judgments for want of jurisdiction. In *Crawford,* the challenge was to a probate court judgment confirming a sale of property that had occurred outside the county seat, which the law did not permit. In *Templeton,* the challenge was to a judgment in the probate of the estate of a decedent who had not resided in the county at the time of his death. But in *Easterline v. Bean,* citing *Crawford* and

---

**55.** 88 Tex. 626, 33 S.W. 325, 328 (1895).

**56.** 89 Tex. 47, 33 S.W. 329, 332 (1895).

*Templeton*, we allowed the collateral attack of a probate court judgment rendered, in guardianship proceedings, after the ward's death to confirm the sale of his property.[57] We noted that statutes terminating a court's jurisdiction over such proceedings at the ward's death "firmly established ... the public policy of this state."[58]

■ Whether distinctions in these cases are or should be material is, we acknowledge, arguable, as is the no-extrinsic-evidence rule itself. The *Restatement (Second) of Judgments* explains:

> The modern rule is that a judgment may be impeached by evidence that contradicts the record in the action. Concern for protecting judgments from contrived attacks is considered adequately served by requiring that an attack based on extrinsic evidence be brought in an appropriate forum and that it be sustained by more than ordinarily persuasive evidence.[59]

But we have not been asked to reconsider the rule here, nor need we attempt to define exceptions with greater certainty. This case fits comfortably under *Templeton*'s exclusion from the rule of "cases over which a court has not, under the very law of its creation, any possible power"[60] because the law of the justice court's creation includes the United States Constitution, which gives the "Power ... To establish ... uniform Laws on the subject of Bankruptcies throughout the United States".[61]

As the Supreme Court explained in *Kalb*, that power extends to limiting state-court jurisdiction:

> Congress manifested its intention that the issue of jurisdiction in the [state] court need not be contested or even raised by the distressed farmer-debtor. The protection of the farmers was left to the farmers themselves or to the Commissioners who might be laymen, and considerations as to whether the issue of jurisdiction was actually contested in the County Court, or whether it could have been contested, are not applicable where the plenary power of Congress over bankruptcy has been exercised as in this Act.[62]

The State argues that *Kalb* does not preempt Texas' no-extrinsic-evidence rule because it requires only that there be *some* forum in which the debtor in bankruptcy can collaterally attack a state-court judgment rendered in violation of the automatic stay, and that forum is the bankruptcy court. The State is vague on what happens after the debtor's bankruptcy has been closed.[63] But we need not decide whether federal law preempts. As a matter of Texas law, a state court has no power to render a judgment in violation of the automatic stay under fundamental, constitutional law, and thus the no-extrinsic-evidence rule limiting a collateral attack does not apply.[64]

---

**57.** 121 Tex. 327, 49 S.W.2d 427, 429–431 (1932).

**58.** *Id.* at 429–430.

**59.** RESTATEMENT (SECOND) OF JUDGMENTS § 77 cmt. a (1982).

**60.** *Templeton*, 33 S.W. at 332.

**61.** U.S. CONST. art. I, § 8, cl. 4.

**62.** *Kalb v. Feuerstein*, 308 U.S. 433, 444, 60 S.Ct. 343, 84 L.Ed. 370 (1940) (footnotes omitted).

**63.** York's counsel stated at oral argument that he had been discharged from bankruptcy for more than a year.

**64.** We assume, as the parties do, that a state court's determination that a state-court judgment did or did not violate the automatic stay would not bind the bankruptcy court. If that is true, it is possible that the bankruptcy court might, by annulment of the automatic stay, validate a judgment already set aside by a state court, though that seems unlikely as long as the parties in state court could seek

## C

The State and County argue that even if the justice court judgment is void and can be collaterally attacked, York has not established that the Chapter 47 proceeding violated the automatic stay.

### 1

The automatic stay applies to, among other things, "any act to obtain possession of property of the estate or of property from the estate".[65] The County argues, as the dissent did in the court of appeals, that the Chapter 47 proceeding does not fall within this provision because York does not own the trailer. The State pointedly does not make this argument.

First, the County contends, the justice court determined that York is not the owner, and its determination is conclusive. But Chapter 47 authorizes only a determination of possession, not ownership. Article 47.01a, under which the State filed, provides in pertinent part:

(a) If a criminal action relating to allegedly stolen property is not pending, a ... judge ... may hold a hearing *to determine the right to possession of the property,* upon the petition of an interested person, a county, a city, or the state. Jurisdiction under this section is based solely on jurisdiction as a criminal magistrate under this code and not jurisdiction as a civil court. The court shall ... order the property delivered to whoever has the superior right to possession....

(b) If it is shown in a hearing that probable cause exists to believe that the property was acquired by theft or by another manner that makes its acquisition an offense and that *the identity of the actual owner of the property cannot be determined,* the court shall order the peace officer to:

(1) deliver the property to a government agency for official purposes;

(2) deliver the property to a person authorized ... to receive and dispose of the property; or

(3) destroy the property.

(c) At a hearing under Subsection (a) of this article, any interested person may present evidence showing that the property was not acquired by theft or another offense or that *the person is entitled to possess the property.* At the hearing, hearsay evidence is admissible.[66]

The court may base its determination of the right to possession on evidence of ownership,[67] but a determination of ownership is a civil matter over which the court is expressly denied jurisdiction.[68] The rightful owner may not even have notice of a Chapter 47 proceeding if law enforcement officials have not managed to locate him. Chapter 47's only purpose is to provide a procedure for determining whether someone claiming allegedly stolen property has a superior right of possession to law enforcement officials.

Second, the County argues, even if Chapter 47 does not authorize a determination of ownership, York's only claim to possession of the trailer was based on his assertion of ownership, and the justice court's rejection of his claim necessarily

relief from the bankruptcy court before the state court's decision.

**65.** 11 U.S.C. § 362(a)(3) (2012).

**66.** Tex.Code Crim. Proc. art. 47.01a (emphasis added).

**67.** *Id.* arts. 47.02, 47.04, & 47.07.

**68.** *Id.* art. 47.01a(a).

rejected the only basis offered for it. Be that as it may—there was no record of the proceeding—the justice court was not authorized to determine ownership and did not do so.

■ Moreover, even if the justice court had been authorized to determine that York did not own the trailer—and thus that it was not part of his bankruptcy estate and that the automatic stay did not apply—that determination would not preclude York's collateral attack. A court cannot insulate its judgments from collateral attack for lack of jurisdiction simply by holding that it has jurisdiction.

Finally, the County argues that even now, York has failed to prove he owns the trailer. He has produced registration receipts, repair bills, and photographs of the 1981 model trailer in use in his small-town business. His name was painted on it. His explanations about how he acquired the trailer from a seller in Snyder more than ten years before it was seized, and how the trailer's VIN plate was lost during repainting, have been independently corroborated. He has produced a copy of the title held as security by the bank for a loan the bank made to him. DPS's investigation in 2006 revealed that no trailer like York's had ever been reported being stolen in Texas. And in the five years since Chapter 47 proceedings were initiated, no one but York has ever claimed the trailer. Whatever doubts York's evidence in the justice court may have failed to dispel—the only evidence of what transpired is from the participants—none remains. The State's and County's refusal to acknowledge the validity of York's claim obviously troubled the court of appeals and troubles us. The County's statutory authority to treat the trailer as stolen for want of a

VIN ends with proof of ownership, and its insistence, after five years of litigation, that York has not proven that he owns the trailer is indefensible.

■ Even if the County's argument had substance, it simply misreads the Bankruptcy Code. The automatic stay applies to an action to obtain possession of property both *of* and *from* a debtor's estate.[69] York scheduled the trailer as an asset in his bankruptcy proceeding years before DPS seized it. He had possession, title (held by the bank as security), and a claim of right. Without question, the Chapter 47 proceeding was an act to obtain possession of property *from*, if not *of*, York's bankruptcy estate and therefore a violation of the automatic stay unless it falls within an exception provided by the Bankruptcy Code.

2

The State and County argue that the Chapter 47 proceeding falls within the "police power" exception to the automatic stay, which excludes "the commencement or continuation of an action or proceeding by a governmental unit ... to enforce [its] police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce [its] police or regulatory power".[70] Courts have used two tests—the "pecuniary purpose" test and the "public policy" test—to determine the application of the "police power" exception.

The pecuniary purpose test reviews whether the government acted primarily to protect its pecuniary interest in the debtor's property or the public safety and welfare. If it is the former, the stay applies. The public policy test examines

---

69. 11 U.S.C. § 362(a)(3) (2012).

70. *Id.* § 362(b)(4) (2012). *See Graber v. Fuqua*, 279 S.W.3d 608, 624 n. 3 (Tex.2009).

whether the government's actions are motivated to effectuate public policy or private rights. Satisfaction of either test will suffice.[71]

Ordinarily, a Chapter 47 proceeding would clearly pass both tests. As the State asserts (though the County disagrees), the government's principal interest in the property involved lies in seeing it returned to its rightful owner. The government has no legitimate pecuniary interest of its own. But in this case, York has alleged that the State and County prosecuted the Chapter 47 proceeding, not for any legitimate purpose, but as a means of depriving him of his property.

Evidence in the record before us supports York's allegation. As already noted, his evidence of ownership of the trailer is overwhelming. Further, he points out that under Article 47.01a(b), the government may not be awarded property in a Chapter 47 proceeding unless there is probable cause to believe property was obtained illegally—there was in this case, because of the missing VIN—*and* that "the identity of the actual owner of the property cannot be determined".[72] Not only is there no evidence that the actual owner of the trailer could not be determined, all the evidence before us is to the contrary. The County argues that for a vehicle without a VIN, ownership can never be determined, but the argument is not supported by authority or logic. DPS's investigation left no reasonable suspicion that the trailer could be owned by anyone other than York or the McNutt Co. In-

deed, confronted with York's evidence, the State and County might well have simply returned the trailer to him. But they ignored York's evidence and declined to contact McNutt.

■ "We expect our government to retrieve stolen property and return it to the rightful owner." [73] Were that expectation warranted here, the "police power" exception to the automatic stay for the Chapter 47 proceeding would be established. But York has raised fact issues that the State acted for reasons outside its police power which must be resolved by the trial court.[74]

### III

■ We turn briefly to York's takings claim that the State and County misused the Chapter 47 proceeding to obtain his property and must therefore pay just compensation. But "[w]hen there exists provision ... for the property's return[,] a constitutional claim is necessarily premature." [75]

■ The State was entitled to seize the trailer for lack of a VIN and to initiate a Chapter 47 proceeding to determine who had a superior right of possession. Even if the State intended to take York's property, as he contends, it could obtain through the proceeding at most possession subject to a claim of ownership, and that is all the justice court awarded. York could have appealed but did not do so. He could have appealed the denial of his bill of review but chose not to. He has prosecuted this action to set aside the justice

71. *In re Chapman,* 264 B.R. 565, 569 (9th Cir.BAP 2001) (citation omitted).

72. Tex.Code Crim. Proc. art. 47.01a(b).

73. *City of Dallas v. VSC, LLC,* 347 S.W.3d 231, 233 (Tex.2011).

74. The State argues that the justice court judgment does not bar York from initiating a

civil proceeding, or even another Chapter 47 proceeding, to obtain possession of the trailer; the availability of such a new proceeding might obviate the need to set aside the justice court's judgment here.

75. *VSC,* 347 S.W.3d at 236.

court's judgment and may yet prevail. And he is not barred from suing the officials who continue to hold the trailer to establish his ownership. Any of these procedures, and certainly all of them together, afford York ample opportunity to recover the trailer and therefore preclude his takings claim.

\* \* \*

The court of appeals' judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.