

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| STEPHEN L. MITCHELL, JANIE MITCHELL BELEW, LISA MITCHELL SEIGMANN, and LINDA MITCHELL STAPLETON, | § | |
| | § | No. 08-17-00155-CV |
| | § | Appeal from the |
| Appellants, | | |
| | § | 143rd District Court |
| v. | | |
| | § | of Reeves County, Texas |
| MAP RESOURCES, INC., PECOS BEND ROYALTIES, LLP, PBR PROPERTIES JOINT VENTURE, and TOMMY VASCOCU, | § | (TC# 15-06-21057-CVR) |
| Appellees. | | |

# **O P I N I O N**

This appeal arises from a collateral attack on a 1999 judgment (Tax Judgment) rendered in a tax deficiency suit (Tax Suit). Appellants Stephen L. Mitchell, Janie Mitchell Belew, Lisa Mitchell Seigmann, and Linda Mitchell Stapleton (collectively, the Mitchells) are the heirs of decedent Elizabeth S. Mitchell, who owned certain mineral interests in Reeves County, Texas, who, together with many other property owners, was named as a defendant in the subject Tax Suit. Appellees Map Resources, Inc., Pecos Bend Royalties, LLP, PBR Properties Joint Venture, and Tommy Vascocu (collectively, Map) acquired the mineral interests which were previously owned by Elizabeth Mitchell as a result of a later tax sale conducted pursuant to the Tax Judgment.

In 2015, the Mitchells filed suit seeking declarations that the Tax Judgment is void as to Elizabeth S. Mitchell and as to her properties, and further, that the deeds issued to Map after the subsequent tax sale are void and of no effect. After cross-motions for summary judgment, the trial court entered judgment (1) denying the Mitchells' motion for summary judgment, (2) granting Map's motion for summary judgment, and (3) ordering a take-nothing judgment on the Mitchells' claims for declaratory judgment. We affirm.

## I. BACKGROUND

In 1998, the Pecos-Barstow-Toyah Independent School District, Reeves County, and Reeves County Hospital District (collectively, Taxing Authorities) filed suit to foreclose on tax liens levied against a multitude of defendants who were individually listed on a spreadsheet identified as Exhibit A which was attached and incorporated by reference to the petition. The petition described the defendants, property and amounts owed, as follows:

> Defendant(s) are those listed below if living, and if any or all of the below named Defendant(s) be dead, the unknown heirs of each or all of the said below named persons who may be dead; and the unknown heirs of the unknown heirs of said below named persons; and the unknown owner or owners of the following described real property; and the executors, administrators, guardians, legal representatives, legatees, devisees of the below named persons, and who own or claim some interest in the following described real property and any and all other persons, including adverse claimants, owning or having any legal or equitable interest in or lien upon the property located in Reeves County, Texas, on which property there are delinquent taxes, penalties and interest, assessed against the property and justly due, owing, and unpaid to Plaintiff in the amount shown opposite each property separately assessed for all delinquent years, between 1978 and 1998 inclusive, if paid in July, 1998:

**DEFENDANT(S), PROPERTY AND AMOUNTS OWED**

**See Attached EXHIBIT "A"**

Elizabeth A. Mitchell was listed among the named defendants.[1] Several months after filing

---

[1] The Mitchells note in their briefing that Elizabeth Mitchell's middle initial is "S," not "A." They do not, however, advance any issue on appeal asserting error because of this misnomer of her name.

the suit, the attorney for the Taxing Authorities filed an affidavit that tracked the requirements for obtaining court approval for citation by posting. *See* TEX. R. CIV. P. 117a. Counsel averred, in relevant part, that each defendant shown on Exhibit A "are either nonresident(s) of the State of Texas, absent from the state or are transient." Additionally, counsel averred that "[t]he names or residences of the owner or owners of the land or lots involved in said suit . . . are unknown and cannot be ascertained after diligent inquiry . . . ."

Based on these averments, counsel requested that citation by posting be permitted on three categories of defendants: (1) those who were nonresidents of Texas, absent from the state, or transient; (2) those whose names or residences were unknown and could not be ascertained after diligent inquiry; and (3) those for whom service was unsuccessfully attempted at the address of the record owner as reflected on a rendition filed with the appraisal district office within the previous five years. A citation by posting giving notice to all defendants who were again listed on Exhibit A was then issued and the officer's return contained thereon reflected that the defendants were served in this manner. The trial court thereafter appointed an attorney ad litem to represent all defendants served by means of citation by posting who had not appeared or answered. *See* TEX. R. CIV. P. 244. The attorney ad litem subsequently filed a motion to withdraw and the trial court appointed a substitute attorney ad litem on February 11, 1999.

On February 19, 1999, after a non-jury trial, the Tax Suit court signed a "Statement of Evidence"—to which the attorney ad litem agreed—which included the following statement:

> [T]he Court then proceeded to inquire into the sufficiency of the diligence exercised in attempting to ascertain the residence or whereabouts of the defendant(s) cited by posting. Plaintiffs['] witness, being sworn, testified to a search of the public records of the County and where such records showed the address of any Defendant(s), citation was issued for personal service on such Defendant(s) at such address in an attempt to secure service thereof, but was unserved, except to the extent recited in the judgment in this cause. The witness further testified that an inquiry was made

3

of the person(s) in possession of the land and those persons in the community who might reasonably be expected to know the whereabouts of such defendant(s)[.]

The court concluded that diligent inquiry had been made and recited in the Tax Judgment that the defendants "were duly served as required by law by means of citation by posting." The Tax Judgment also awarded foreclosure of the Taxing Authorities' liens on the subject properties, and further ordered the properties be sold as under execution.

Thereafter, Appellees Pecos Bend Royalties, LLP, PBR Properties Joint Venture, and Tommy Vascocu purchased Elizabeth Mitchell's mineral interests at a tax sale and later conveyed a portion of those interests to Map Resources, Inc.

In June 2015, or sixteen years after the Tax Judgment was signed, the Mitchells filed suit as heirs of Elizabeth Mitchell, who had died in 2009. The Mitchells alleged that the 1999 Tax Judgment was void as to Elizabeth Mitchell because "there was a complete failure of service of citation on her and she was thereby denied due process guaranteed her under the Fourteenth Amendment to the United States Constitution and under Article I, Sections 13 and 19 of the Texas Constitution." They specifically alleged that the attorney for the Taxing Authorities gave false testimony about Elizabeth Mitchell's address being unknown because eight warranty deeds, dated from November 14, 1983 through December 13, 1983,[2] had remained of public record at the time of the tax suit, and thus these deeds were easily discoverable by search of those public records and showed not only that she owned the subject property but additionally included her post office address. Thus, they concluded, the attorney must not have made a diligent search of the public records or he would have discovered this address and personally served Elizabeth Mitchell. The Mitchells sought declarations that the Tax Judgment was void as to Elizabeth Mitchell and her

---

[2] More specifically, three of the warranty deeds were dated November 14, 1983, one was dated November 16, 1983, three were dated November 21, 1983, and one was dated December 13, 1983.

property, and further declaration that subsequent deeds reflecting ownership by Map were also void and of no effect as to the property. In answer to the Mitchells' petition, Map raised the affirmative defenses of limitations, failure to comply with statutory conditions precedent, waiver, and laches.

The Mitchells moved for summary judgment on the ground that the Tax Judgment was entered without personal jurisdiction as to the person or property of Elizabeth Mitchell, now deceased and the predecessor in title of the subject property. In turn, Map countered with its own motion for summary judgment on the grounds of limitations, failure to comply with statutory conditions precedent, and improper or ineffective collateral attack.[3] Map raised these same matters in its response to the Mitchells' summary judgment motion, as well as the affirmative defense of laches. In response to Map's motion, the Mitchells argued that statutory limitations and procedures do not apply if a party has been denied due process. They also argued that it is proper to look beyond the face of the Tax Judgment to determine whether the court had jurisdiction, and that the 1983 warranty deeds are not extrinsic evidence because the attorney for the Taxing Authorities referenced "public records" in his testimony.

After the summary judgment hearing, but before the court ruled on the summary judgment motions, Map filed an amended answer containing special exceptions and two new affirmative defenses. The Mitchells objected to the new pleading on the ground that it was not timely filed, and that Map did not seek leave of court to file it. Map thereafter filed a motion seeking leave to file the amended pleading, but the record does not contain a ruling on that motion.

---

[3] The substance of this third ground was that the record conclusively established that the Tax Suit court did have personal jurisdiction over Elizabeth Mitchell.

5

Several months later, the trial court signed its judgment denying the Mitchells' summary judgment motion, granting Map's summary judgment motion, and ordering a take-nothing judgment on the Mitchells' claims for declaratory judgment. This appeal followed.

## II. DISCUSSION

The fundamental issue in this appeal is whether the Mitchells established, as a matter of law, that the Tax Suit court lacked personal jurisdiction over Elizabeth Mitchell. The Mitchells argue here that the court lacked such jurisdiction because Elizabeth Mitchell's address was known or readily ascertainable, but no attempt was made to personally serve her with process. They contend that, in these circumstances, citation by posting violated her due process rights and was therefore ineffective to confer personal jurisdiction over her in the Tax Suit.

The Mitchells also contend on appeal that the trial court erred by granting Map's motion for summary judgment because (1) statutes of limitations and conditions precedent contained in the Texas Tax Code do not apply in the absence of personal jurisdiction, (2) the Mitchells' lawsuit is not an improper collateral attack on the Tax Judgment, and (3) Map's affirmative defenses and special exceptions cannot support granting summary judgment because they were filed late and without leave of court.

### A. Standard of Review

Summary judgments are reviewed *de novo*. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A party moving for traditional summary judgment has the burden to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Mann*, 289 S.W.3d at 848; TEX. R. CIV. P. 166a(c). "[A] defendant who conclusively negates at least one essential element of a cause of action or conclusively establishes

6

all the elements of an affirmative defense is entitled to summary judgment." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015).

"When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented." *Mann*, 289 S.W.3d at 848. And where, as in this case, "the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Knott*, 128 S.W.3d at 216.

## B. Due Process and Collateral Attack

The Mitchells moved for summary judgment on the ground that the Tax Suit court lacked personal jurisdiction over Elizabeth Mitchell given that citation by posting had failed to afford her due process as guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section 19 of the Texas Constitution. More particularly, the Mitchells asserted that because Elizabeth's address was readily ascertainable from publicly recorded warranty deeds, her right to due process required personal service on her at the P.O. Box address that appeared in those public records.

As instructed by the United States Supreme Court, the Due Process Clause of the Fourteenth Amendment requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950); *see also Shaw v. Phillips Crane & Rigging of San Antonio, Inc.*, 636 S.W.2d 186, 187 (Tex. 1982) (recognizing that due process requires that a property owner must be given notice and an opportunity to be heard before being divested of their interest in property). The Texas Supreme Court fairly recently observed that

7

"*Mullane* remains the seminal case involving notice by publication, and it explains how to evaluate the adequacy of notice." *In re E.R.*, 385 S.W.3d 552, 558 (Tex. 2012).

*Mullane* noted that, in any proceeding to be accorded finality, an elementary and fundamental requirement of due process requires notice that is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the suit and to afford them an opportunity to present their objections. *Mullane*, 339 U.S. at 314. "[W]hen notice is a person's due, process which is a mere gesture is not due process." *Id*. at 315. Thus, *Mullane* observed that personal service is the classic form of notice—which is always adequate in any type of proceeding. *Id.* at 313. Yet, the Court also noted that personal service is not always necessary. *Id.* at 313-14 ("[a] construction of the Due Process Clause which would place impossible or impractical obstacles in the way could not be justified."). For missing or unknown persons, *Mullane* acknowledged that service by an indirect method—even if likely futile—raises no due process concerns. *Id*. at 317.

In the context of a suit for delinquent ad valorem taxes, the manner of notice is further governed by Rule 117a of the Texas Rules of Civil Procedure. That rule provides that, where the defendant is a Texas resident whose name and residence are known, citation shall be by personal service, unless the defendant is subject to service by publication under subsection three. TEX. R. CIV. P. 117a(1). Subsection three authorizes service by publication where:

> the name or the residence of any owner of any interest in any property upon which a tax lien is sought to be foreclosed, is unknown to the attorney requesting the issuance of process or filing the suit for the taxing unit, and such attorney shall make affidavit that . . . the name or residence of such owner is unknown and cannot be ascertained after diligent inquiry . . . .

TEX. R. CIV. P. 117a(3).[4]

---

[4] The Mitchells do not contend that Rule 117a does not adequately protect a party's due process right to notice. They contend only that the rule was not properly followed in this case.

Additionally, if the attorney requesting the issuance of process files an affidavit showing that publication of the citation cannot be had for "the lowest published word or line rate of that newspaper for classified advertising," Rule 117a(3) further provides that "service of the citation may be made by posting a copy at the courthouse door of the county in which the suit is pending . . . ." *Id.* As relevant to these requirements, the record here demonstrates that the attorney for the Taxing Authorities filed such an affidavit meeting the posting requirements of Rule 117a(3).

Nonetheless, the Mitchells argue on appeal that, under Rule 117a, the Taxing Authorities were required to give Elizabeth Mitchell notice of the Tax Suit not by publication or by posting but by personal service based on the assertion that her address was known or readily ascertainable from the available public records. The Mitchells specifically rely on eight warranty deeds filed of record in 1983 that each identified the grantee of the subject property as: "Elizabeth S. Mitchell, P.O. Box 428, Van Horn, Texas 79855." Countering, Map complains that the Mitchells' attack against the Tax Judgment is based on extrinsic evidence outside the record that is prohibited from consideration by a reviewing court. Thus, in this collateral attack on the Tax Judgment, the threshold question is whether these warranty deeds may properly be considered as evidence on the question of whether the Tax Court had acquired personal jurisdiction of Elizabeth Mitchell.

Generally, a collateral attack on a final judgment is disallowed because the public policy of the law requires that we give finality to the judgments of the courts. *Browning v. Prostok*, 165 S.W.3d 336, 345 (Tex. 2005). But a collateral attack on a judgment is permitted "when a failure to establish personal jurisdiction violates due process." *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 273 (Tex. 2012). For it is well recognized that a judgment entered without notice or service is deemed constitutionally infirm. *Id.* at 272-73 (citing *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 84 (1988)). When attacked collaterally, a judgment is presumed valid; but that

9

presumption disappears when the record affirmatively reveals a jurisdictional defect. *Id.* at 273 (citing *Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994) and *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008)). However, to rise to the level of a defect violating due process, there must be a complete failure or lack of service, not merely a technical defect in service. *Id.* at 274. A reviewing court may look beyond the face of the judgment to determine whether the record of the underlying suit affirmatively demonstrates a lack of jurisdiction. *Id.* However, based on public policy reasons, it is long recognized that "a judgment rendered by a court without jurisdiction cannot be collaterally attacked with extrinsic evidence . . . ." *York v. State*, 373 S.W.3d 32, 41 (Tex. 2012). In short, a court may consider the entire record of the prior proceeding, but it remains confined thereto and may not consider evidence outside that record. *See PNS Stores*, 379 S.W.3d at 273 (a court may look beyond the face of the judgment to the record of the underlying suit); *York*, 373 S.W.3d at 41 (a court may not consider extrinsic evidence).

## C. Analysis

The Mitchells argue here that the prohibition against using extrinsic evidence to collaterally attack a judgment does not apply to evidence of a party's address which is contained in a public record. None of the cases on which they rely, however, contain any mention of the prohibition against extrinsic evidence or otherwise rest on a premise showing the court determined it was permitted to consider such public record evidence. *See Schroeder v. City of New York*, 371 U.S. 208, 212-13 (1962) (holding that newspaper publications and posted notices which were authorized by New York statute did not measure up to the quality of notice required by the Due Process Clause); *Sec. State Bank & Tr. v. Bexar Cty.*, 397 S.W.3d 715, 721 (Tex. App.—San Antonio 2012, pet. denied) (record of tax suit affirmatively established a complete failure to notify

or join a record lienholder bank as a party to the delinquency proceeding); *Ocwen Loan Servicing, LLC v. Gonzalez Fin. Holdings, Inc.*, 77 F. Supp. 3d 584, 595 (S.D. Tex. 2015), *aff'd sub nom. Ocwen Loan Servicing, L.L.C. v. Moss*, 628 Fed. Appx. 327 (5th Cir. 2016) (unpublished) (lienholder bank not given notice reasonably calculated to apprise it of the pending tax sale). Because the cases cited do not themselves address this rule of prohibition, we find these authorities offer little assistance or persuasive force.

Unlike the cases on which the Mitchells rely, however, the Texas Supreme Court explicitly discussed in *York* the prohibition against using extrinsic evidence in a collateral attack of a judgment, and cited an example squarely on all fours with the present case:

> Therefore it is well settled that, where a personal judgment has been rendered against a defendant by a domestic court of general jurisdiction, and under the same his property has been seized and sold, he will not, in a contest over the title to the property, *be allowed to show by evidence dehors the record that the judgment was rendered without any service whatever upon him*. Logically, the judgment is, in fact, void, but on grounds of public policy the courts, in order to protect the property rights, apply the rule aforesaid, which precludes inquiry into facts dehors the record for the purpose of showing the invalidity of the judgment; and therefore, for all practical purposes, in such collateral attack, the judgment is held valid.

*York*, 373 S.W.3d at 41 (quoting *Crawford v. McDonald*, 88 Tex. 626, 33 S.W. 325, 328 (1895)) (emphasis added). Although a judgment void on its face is subject to collateral attack, *York* reiterated that a judgment rendered by a court without jurisdiction cannot be collaterally attacked with extrinsic evidence for reasons of public policy. [5] *Id*.

Here, the 1983 warranty deeds themselves were not before the court in the Tax Suit and are, therefore, "evidence dehors the record," or extrinsic evidence, as is more commonly described.

---

[5] Although *York* further recognized there are limited exceptions to the no-extrinsic evidence rule, none of the exceptions listed are applicable here and the Mitchells have not argued otherwise. *See York*, 373 S.W.3d at 41 (discussing certain classes of cases over which the law raises no presumptions in their support such that facts bringing any case within one of such classes may be established by evidence dehors the record either in direct or collateral attack).

11

*See id.* Pursuant to *York*, we are not permitted to consider these warranty deeds as evidence to collaterally attack the Tax Judgment. *See id.* Yet, we further acknowledge that *York* contains language indicating some uncertainty concerning the future of the "no-extrinsic-evidence rule." *See id*. at 42 (describing the continued viability of the rule as being "arguable"). Nonetheless, *York* did not reconsider the rule due to the procedural posture of the case, nor has it disturbed it in the eight years since.

We note, however, that the Mitchells do not argue against *York*'s holding. Instead, the Mitchells argue here that the recorded deeds on which they rely are not extrinsic evidence because the Taxing Authorities referred to public records in their Tax Suit pleadings and their attorney testified that he had made a search of such public records. Thus, pursuant to Section 13.002 of the Texas Property Code, the Mitchells argue that the Taxing Authorities' reference to having made a records search amounted to an admission of having notice of the existence of the 1983 deeds and their contents. *See* TEX. PROP. CODE ANN. § 13.002(1) ("An instrument that is properly recorded in the proper county is notice to all persons of the existence of the instrument . . . ."); *see also*, *Cosgrove v. Cade*, 468 S.W.3d 32, 38 (Tex. 2015) ("public records can constitute constructive notice and therefore create an irrebuttable presumption of actual notice"). We return then, to the question of whether the Mitchells conclusively established that the Tax Suit court lacked personal jurisdiction over Elizabeth Mitchell.

The Tax Judgment is regular on its face and recites that the defendants, who include Elizabeth Mitchell, were duly served as required by law. In the absence of proof in the Tax Suit record establishing a jurisdictional defect, the judgment is presumed to be valid. *PNS Stores*, 379 S.W.3d at 273. Again, the basis of the Mitchells' jurisdictional argument is that the Taxing Authorities were required to personally serve Elizabeth Mitchell because the 1983 warranty deeds

12

state a P.O. Box address for her and, consequently, her address was either known to or readily ascertainable by them. But even giving due weight to the irrebuttable presumption of notice of these instruments, there is no showing that the address appearing within these instruments remained a valid address for Elizabeth Mitchell's residence over fifteen years later when the Tax Suit was filed.[6] In the absence of some evidence that Elizabeth Mitchell still possessed this P.O. Box address at or near the time of suit, we find that the 1983 warranty deeds do not conclusively establish that her residence in 1998 was either known or readily ascertainable.

We also reject the Mitchells' contention that the summary judgment record conclusively establishes that no attempt was made to personally serve Elizabeth Mitchell. The basis of this contention is that the Tax Suit record does not contain any citations for personal service or returns of citation. But this absence of such record does not affirmatively establish a jurisdictional defect amounting to a violation of due process. *See PNS Stores*, 379 S.W.3d at 273. To establish such a defect requires proof of a complete failure or lack of service, not merely a technical defect. *Id.* The absence in the record of citations or returns of citation establishes only that those documents are not in the record—or, a technical defect. For our purposes, it does not affirmatively, conclusively, or even necessarily establish that those documents never existed or that personal service was never attempted, such that we may otherwise conclude that the Mitchells met their evidentiary burden.

On the other hand, we note that the Tax Suit record contains affirmative evidence that personal service *was* attempted on those defendants for whom the public records revealed an

---

[6] Without evidence establishing her continued use of that address, it would be sheer speculation for us to infer from the 1983 warranty deeds alone that Elizabeth Mitchell still possessed the P.O. Box address in 1998. Speculation is not evidence. *See Univ. of Texas at El Paso v. Muro*, 341 S.W.3d 1, 5 (Tex. App.—El Paso 2009, no pet.) ("When circumstantial evidence is so slight that the choice between opposing plausible inferences amounts to nothing more than speculation, it is legally no evidence at all.").

13

address.  As recited in the Statement of Evidence, the Taxing Authorities' attorney testified that he made a search of public records and, where those records revealed an address for a defendant, citation was issued for personal service on those defendants at the stated address, but remained unserved.[7] The Mitchells insist that the Taxing Authorities must have discovered Elizabeth Mitchell's P.O. Box address in the public record. The attorney's testimony, as noted above, established that citation was issued for personal service to her at that address, service was attempted, but was not successful.

This, however, did not end the Taxing Authorities' efforts to locate defendants, including Elizabeth Mitchell, to effect personal service.  The Taxing Authorities' attorney testified that he also tried to ascertain addresses by making inquiry of persons in possession of the land and persons in the community who might reasonably be expected to know the whereabouts of a defendant. The Mitchells do not address this additional attempt to ascertain Elizabeth Mitchell's address.  But the additional attempt, together with the attempt to serve process at the P.O. Box address, supports the court's conclusion in the Tax Suit that the Taxing Authorities made diligent inquiry before resorting to citation by posting, as permitted by Rule 117a.[8] *See* TEX. R. CIV. P. 117a(3).

In short, the summary judgment evidence does not conclusively prove that citation on Elizabeth Mitchell by posting violated either Rule 117a or Elizabeth Mitchell's due process rights. As a result, the evidence does not conclusively prove that the Tax Suit court lacked personal

---

[7] Given that the trial court's Statement of Evidence is based on the testimony of the Taxing Authorities' attorney rather than his affidavit, we need not address the Mitchells' assertion that the affidavit is conclusory.

[8] We note that the Mitchells did not provide this Court with a transcript of the testimony on which the Statement of Evidence is based.  Because of that omission, we must presume that the testimony supports the trial court's conclusion of diligent inquiry and the recitation in the Tax Judgment that defendants were "duly served as required by law."  *See Freeman v. Formosa Mgmt., L.L.C.*, No. 01-15-00907-CV, 2016 WL 6803234, at *4 (Tex. App.—Houston [1st Dist.] Nov. 17, 2016, pet. denied) (presuming court's recitals are correct in absence of complete record from collaterally attacked proceeding).

14

jurisdiction over her. We thus conclude that the Mitchells failed to establish their entitlement, as a matter of law, to declarations that the Tax Judgment and subsequent deeds are void. Regardless of whether we consider the 1983 warranty deeds themselves within our scope of review, we hold that the trial court did not err by denying the Mitchells' motion for summary judgment.

Issue One is overruled.

### D. Map's Motion for Summary judgment

A defendant is entitled to summary judgment if it conclusively negates at least one essential element of the plaintiff's cause of action. *Bradshaw*, 457 S.W.3d at 79. An essential element of the Mitchells' declaratory judgment cause of action is that the Taxing Authorities were required to personally serve, or attempt to serve, Elizabeth Mitchell at a P.O. Box address appearing in the public record. Map challenged this element in its summary judgment motion by demonstrating that the Mitchells' cause of action impermissibly depended on extrinsic evidence and that the record of the Tax Suit establishes that the Taxing Authorities did attempt to personally serve Elizabeth Mitchell at the P.O. Box address.

In their third issue on appeal, the Mitchells challenge the granting of Map's summary judgment motion by again arguing that citation by posting violated Elizabeth Mitchell's due process right to notice because the Taxing Authorities were required to personally serve her, or at least attempt to serve her, at the P.O. Box address contained in the 1983 warranty deeds. For all the reasons discussed above, the summary judgment record establishes that citation by posting did not violate Elizabeth Mitchell's due process rights and was sufficient to confer personal jurisdiction over her in the Tax Suit court. Accordingly, the trial court did not err by granting Map's motion for summary judgment.

Issue Three is overruled.

**E. Remaining Issues**

Because the trial court's judgment may be upheld on the ground that the evidence conclusively negates the Mitchells' assertion of lack of personal jurisdiction, we need not address whether summary judgment was proper based on any of Map's affirmative defenses. *See Knott*, 128 S.W.3d at 216 (where order does not specify ground, summary judgment may be affirmed on any meritorious theory). We also need not address the Mitchells' complaints concerning Map's late-filed amended pleading as that pleading has no bearing on our analysis.

## III.    CONCLUSION

The Tax Judgment is regular on its face and recites that the defendants "were duly served as required by law by means of citation by posting[.]" Nothing in the record of the Tax Suit establishes a jurisdictional defect to overcome the presumption of validity to which the judgment is entitled. *See PNS Stores*, 379 S.W.3d at 273. Rather, the evidence establishes that, before resorting to citation by posting, the Taxing Authorities exercised diligence by trying to personally serve those defendants for whom an address appeared in the public records. Under the Mitchells' own theory of the case—that the Taxing Authorities were aware of Elizabeth Mitchell's P.O. Box address because it appeared in the public record—this evidence establishes that personal service on Elizabeth Mitchell was attempted, without success, and then followed with citation by posting. The record thus conclusively negates the lynchpin of the Mitchells' claim—that citation by posting violated Elizabeth Mitchell's due process right to notice of the Tax Suit.

The judgment of the trial court is affirmed.


September 29, 2020                                          GINA M. PALAFOX, Justice

Before Alley, C.J., Rodriguez, and Palafox, JJ.
Alley, C.J., concurring
Rodriguez, J., dissenting